(February 23, 1984)

■ In the Matter of BEST WAY BEER & SODA DISTRIBUTORS, INC., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. — Determination of the respondent New York State Liquor Authority, rendered February 15, 1983, which ordered a 20-day suspension, 10 days to be served forthwith and 10 days to be temporarily deferred, and a $5,000 bond claim as against the wholesale beer license issued to petitioner Best Way Beer & Soda Distributors, Inc., is modified, on the law and facts, to grant the petition to the extent of remanding for reconsideration of the penalty imposed, and otherwise confirmed, without costs. The facts herein are essentially undisputed. Petitioner was charged with violating subdivision 2 of section 55-b of the Alcoholic Beverage Control Law in that it increased the price of beer sold to retail licensees within 180 days after the last price decrease on such beer. More specifically, it was stipulated that on March 13, 1982, the petitioner was selling 12 oz. bottles of Miller beer at a price of $7.90 per case in New York City; that on April 2 and April 3, 1982, the petitioner had decreased the New York City price for such beer to $7.60 per case for 30 or more cases and that on April 11, 12 and 16, 1982, the petitioner increased the New York City price of such beer back to $7.90 per case. The petitioner does not challenge the respondent authority's determination on the ground that it was not supported by substantial evidence. Petitioner does assert that subdivision 2 of section 55-b of the Alcoholic Beverage Control Law violates the Sherman Antitrust Act in that it fosters and promotes restraint of trade and price fixing, thereby eliminating competition. However, the purpose of subdivision 2 of section 55-b is not to promote restraints of trade but to prevent them. If this enactment did not exist, the large volume beer wholesalers could lower their prices below their cost, for short periods of time. After so forcing the smaller beer wholesalers out of business, the few remaining large wholesalers could then immediately fix their prices at artificially high prices. Subdivision 1 of section 55-b of the Alcoholic Beverage Control Law sets forth the purpose of the Legislature in enacting this law as follows: "It is hereby declared as the policy of the state that the sale and distribution of beer shall be subject to certain restrictions, prohibitions and regulations which tend to *maintain an orderly market and prevent destructive competition*. The necessity of the provisions of this section is therefore declared as a matter of legislative necessity" (emphasis added). The dissent disagrees with the foregoing analysis of the purpose of section 55-b and finds it "plausible" that the statute does tend to discourage competition. Where the wording of the statute and the intent and purpose of the Legislature is clear and unambiguous, the courts are not privileged to lightly ignore its evaluation of the effect of the legislation and to interpose contrary views of what the public need demands (*Betz v Horr*, 276 NY 83). Even assuming the purpose of the statute is to discourage competition, the Federal antitrust laws do not prohibit a State "as sovereign" from imposing certain anticompetitive restraints "as an act of government" in order to effectuate an orderly market (*Parker v Brown*, 317 US 341, 352). *California Liq. Dealers v Midcal Aluminum* (445 US 97), cited by the dissent, is not to the contrary. There the Supreme Court dealt with a challenge to California's pricing plan which gave wine producers the power to prevent price competition by dictating the prices charged by wholesalers. The court held that the scheme constituted resale price maintenance in violation of the Sherman Act since a private party was delegated the power to prevent price competition. However, the Supreme Court in *Midcal* set forth two criteria for antitrust immunity under *Parker v Brown* (*supra*). "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the

policy must be 'actively supervised' by the state itself [citation omitted]" (*California Liq. Dealers v Midcal Aluminum, supra,* at p 105). The first criterion is concededly met in the instant case by subdivision 1 of the challenged section of the Alcoholic Beverage Control Law set forth above. Insofar as the second criterion is concerned, section 55-b neither permits nor sanctions private parties engaging in resale price maintenance in violation of the Sherman Act. After the brewer or wholesaler decreases its price, it may not raise the price for 180 days thereafter. This scheme is not promulgated or controlled by the brewers or wholesalers, but is administered by the State Liquor Authority, an agency of the State of New York. Therefore, even assuming, *arguendo,* the purpose of the statute to be anticompetitive, it is "compelled by direction of the state acting as a sovereign" (*Goldfarb v Virginia State Bar,* 421 US 773, 791), and as such, the regulation is immune from the Sherman Act under *Parker v Brown (supra).* However, we deem the penalty imposed by respondent authority upon petitioner to be "so grave in its impact * * * that it is disproportionate to the misconduct" (*Matter of Pell v Board of Educ.,* 34 NY2d 222, 234). The testimony submitted indicates that petitioner co-operated fully in respondent's investigation and it appears the violation was unintentional. The improper pricing continued only for a period of one week and there is no evidence that this inadvertent violation by petitioner will be continued or repeated in the future. Consequently, the imposition of a fine would appear to be a more appropriate penalty. However, we remand for reconsideration by respondent authority to determine the exact nature of the penalty to be imposed (see *Rob Tess Rest. Corp. v New York State Liq. Auth.,* 49 NY2d 874). Concur — Ross, Carro, Asch and Bloom, JJ.

Murphy, P. J., dissents in a memorandum as follows: This article 78 proceeding involves the validity and enforcement of subdivision 2 of section 55-b of the Alcoholic Beverage Control Law. This section reads as follows: "2. No brewer or beer wholesaler may increase the price per case, draft package or special package of beer sold to beer wholesalers or retail licensees until at least one hundred eighty days have elapsed since his last price decrease on such case, draft package or special package, provided, however, that the brewer or beer wholesaler may increase any price established by him at any time in the amount of any direct tax increase on beer, or on containers thereof, actually paid by such brewer or beer wholesaler, and provided further, however, that if a brewer or beer wholesaler has increased his price to beer wholesalers at any time pursuant to the provisions hereof, the beer wholesaler may increase the price established by him on such package in an amount equal to the direct price increase to the beer wholesaler. The price per case, draft package or special package of beer sold to beer wholesalers or retail licensees on the first day of the month following the effective date of this act shall be deemed the base price, to or from which price increases or decreases may be made in accordance with the provisions of this section." Petitioner is licensed by the respondent to sell beer at wholesale only to retail licensees. At the administrative hearing, petitioner stipulated that, on March 13, 1982, it had sold 12 oz. bottles of Miller beer at a price of $7.90 per case. It further stipulated that, on April 2 and April 3, 1982, it had sold that beer at $7.60 per case. It was also stipulated that, on April 11, 12 and 16, 1982, the price of that beer was raised to $7.90 per case. Petitioner was found in violation of subdivision 2 of section 55-b of the Alcoholic Beverage Control Law. The respondent imposed a 20-day suspension of petitioner's license. Ten days were to be served forthwith; 10 days were to be temporarily deferred. The penalty also included a $5,000 bond claim. There is substantial evidence in the record to support the administrative determination with regard to the violation of subdivision 2 of section 55-b. Likewise, the penalty imposed does not shock the conscience. However, peti-

tioner alleges in the petition that subdivision 2 of section 55-b of the Alcoholic Beverage Control Law "is unconstitutional in that said statute fosters and promotes restraint of trade and price fixing while eliminating competition". In its brief, petitioner advances the same argument based upon a violation of the Sherman Antitrust Act. Petitioner argues that it is a "small" wholesaler and that it does not have the financial resources or the facilities to comply with subdivision 2 of section 55-b of the Alcoholic Beverage Control Law. It is petitioner's position that only "large" wholesalers can comply with the statute and that they alone are benefited by it. In the answer, respondent denied the allegation in the petition relating to price fixing. Respondent, in its brief, avers that subdivision 2 of section 55-b does not promote restraints of trade but prevents it. That section, according to respondent, does not eliminate competition but promotes it. Respondent stresses that, but for subdivision 2 of section 55-b of the Alcoholic Beverage Control Law, "large" wholesalers could lower their prices until they forced the "small" wholesalers out of business. It is not evident to me why subdivision 2 of section 55-b encourages competition or maintains an orderly market. The argument advanced by petitioner seems very plausible, i.e., the "small" wholesaler is being damaged by the restrictive force of the statute. In a recent decision, the United States Supreme Court found that the California wine pricing program was in violation of the Sherman Act (*California Liq. Dealers v Midcal Aluminum,* 445 US 97). The present proceeding should be evaluated in the light of the opinion in *California* (*supra*), to determine whether subdivision 2 of section 55-b unlawfully permits "large" wholesalers to fix very low prices and drive "small" wholesalers out of business. I would agree with the majority that the State of New York has met the first standard for immunity from the Sherman Act. The legislative policy is aimed at maintaining an orderly market and preventing destructive competition (Alcoholic Beverage Control Law, § 55-b, subd 1). However, a serious question is raised as to whether the State has met the second standard. Specifically, an issue is raised as to whether the State has actively supervised this policy (*California Liq. Dealers v Midcal Aluminum, supra,* at pp 105-106). The State of New York merely permits wholesalers to set prices for a period of 180 days. If the particular wholesaler does not maintain the price for 180 days, then the State, through the State Liquor Authority, enforces an appropriate penalty under section 55-b of the Alcoholic Beverage Control Law. The State neither establishes prices nor reviews the reasonableness of the prices set by the wholesaler. It does not monitor market conditions nor does it engage in any "pointed examination" of this program. Under such circumstances it is very questionable whether the State is actively supervising this program under section 55-b of the Alcoholic Beverage Control Law. The portion of the petition which seeks to hold subdivision 2 of section 55-b in violation of the Sherman Act should be converted to an action for declaratory judgment and the matter should be remanded for further proceedings including an evidentiary hearing (*Matter of Kovarsky v Housing & Dev. Admin.,* 31 NY2d 184, 191). The portion of the petition as seeks to vacate the administrative determination should be held in abeyance pending resolution of the declaratory judgment action.