[746 NYS2d 694]

In the Matter of the Estate of ELISABETH VON KNAPITSCH, Deceased. ANNE H. HUSTON et al., Appellants; FRANCIS X. MORRISSEY, Appellant, and ETHEL J. GRIFFIN, as Public Administrator of the County of New York, Respondent, et al., Respondents.

First Department, August 15, 2002

## APPEARANCES OF COUNSEL

*Nora S. Anderson* of counsel (*Seth Rubenstein, P.C.,* attorney), for appellants.

*John R. Morken* of counsel (*Ilene S. Cooper* on the brief; *Farrell Fritz, P.C.,* attorneys), for Francis X. Morrissey, appellant.

*Peter S. Schram* of counsel, (*Colleen F. Carew* on the brief; *Schram & Carew, P.C.,* attorneys), for Ethel J. Griffin, respondent.

## OPINION OF THE COURT

SULLIVAN, J.

The decedent, Elisabeth von Knapitsch, died on January 15, 2000, at the age of 91, a resident of 470 Park Avenue, New York City, with an estate valued at approximately $15,000,000. Her husband predeceased her in 1980; there were no children of the marriage. The identity of her distributees is still in dispute. The closest known surviving relatives are first cousins, six of whom are known. Two reside in the United States (California and Missouri) and four outside, in Canada, England and Holland.

On or about March 17, 2000, Warren Forsythe and Anne Hilde Huston, the executors and petitioners herein, offered for probate an instrument, dated July 17, 1997, drafted by Mr. Forsythe, an attorney. The will made multiple preresiduary bequests for the benefit of friends, a relative on the decedent's predeceased husband's side of the family and a named charity, and devised and bequeathed the residue of her estate to Francis X. Morrissey, Jr., an attorney and friend of the decedent and her deceased husband since the early 1970s, who also received substantial preresiduary bequests. Subsequent to the filing of this instrument, six prior wills of the decedent, dated March 26, 1990, May 31, 1990, April 7, 1992, January 15, 1993, June 29, 1993 and March 13, 1996, respectively, were also filed with the court. Neither the subject will nor any of the prior wills mention the decedent's cousins. In fact, none of the six other prior testamentary instruments executed during the period 1977 through 1988 provide for the first cousins.

Instead, beginning with the first of these instruments, executed on May 26, 1977, through the date of the subject instrument, 11 of the decedent's 13 American wills[1] name Morrissey

---

1. The exceptions are the wills executed June 20, 1988 and March 26, 1990.

as either an executor, trustee or beneficiary of her estate.[2] Notably, in the will dated December 24, 1980 and, then again, in the five wills executed between 1992 and 1997, Morrissey received 100% of the decedent's residuary estate, thus, according to the Public Administrator, establishing a pattern where Morrissey takes the residuary estate whenever Forsythe drafts the will.

The initial petition for probate of the subject will listed as the decedent's only distributee a maternal first cousin, Kurt Simon, a resident of Los Angeles, California, who initially executed a waiver of citation and consent to probate, but later, on May 26, 2001, appeared by counsel. Subsequent to its filing, the initial petition has been amended three times to reflect the discovery of previously unknown additional cousins. With the filing of each amended petition, supplemental citation was issued; a second distributee, Adelheid Schweitzer, a paternal first cousin of the decedent, filed a waiver of citation. The other distributees defaulted.

Certain beneficiaries of substantial bequests made under prior wills of the decedent, to wit, members of the von Knapitsch family, The Animal Medical Center and the estate of Marianne Ware, a former employee of the decedent, who will be adversely affected by probate of the subject will, have filed objections. The Public Administrator of New York County, on behalf of "unknown distributees," also filed objections. The objections assert that on the day of the will's execution, July 17, 1997, the decedent lacked testamentary capacity, that the instrument was not duly executed and that it was procured by the undue influence and fraud of Morrissey and others acting in concert with him.

According to Morrissey and petitioners, all of the decedent's surviving heirs have been located and, thus, with the closing of the class of "unknown distributees," the Public Administrator's interest in the matter has terminated and her objections have become moot as she no longer represents persons with a pecuniary interest. The basis for this assertion is an affidavit of a genealogist who has investigated the decedent's family tree and states that decedent was survived solely by six distributees, the first cousins previously mentioned. The Public Administrator argues that the identity of the decedent's distributees remains unknown, citing "gaping holes" in the

---

2.  Since the commencement of the probate proceeding, during discovery two additional wills of the decedent, executed in Austria in 1988 and 1989, were located.

genealogist's affidavit. The status, for instance, of a sister, Hildegarde, and her daughter, whose name is not even known, as well as that of various aunts and uncles and their issue, has not been determined. The genealogist stated that one of the decedent's cousins, Klaus Simon, had died between 1917 and 2000, an 83-year period, despite the fact that Klaus's sister, Lily, still alive and living in Canada and apparently never contacted, could likely have clarified the situation. In addition, the genealogist concluded that one of the decedent's cousins died "before 2000," conveniently, as the Public Administrator argues, before the decedent's death in January 2000.

Arguing that there are no "unknown distributees" and that the six distributees identified by the genealogist either waived citation or defaulted, Morrissey moved to strike the Public Administrator's objections to probate on the ground she lacked standing pursuant to the provisions of SCPA 1410. Morrissey further argued that the Public Administrator's standing could not be based on any purported right to serve as fiduciary, inasmuch as two of the decedent's distributees were United States residents, who, in the event that all 15 of the decedent's wills were denied probate, are eligible to serve as administrators. Petitioners joined in the application. The Public Administrator and The Animal Medical Center opposed. On October 30, 2001, after hearing oral argument, the Surrogate denied the motion from the bench, finding that the Public Administrator represented parties with a financial interest in the outcome of the proceeding. The Surrogate noted that the matter should be closely examined because it involves "a sole residuary beneficiary who is a lawyer in a confidential relationship to the decedent, who was the person, not the decedent, who was in contact with the draftsman." Thereafter, a memorandum decision, which together with the transcript of the October 30, 2001 proceedings constituted the order of the court, was filed. Petitioners and Morrissey appeal from that order. We affirm.

The Public Administrator's standing to file objections in a probate proceeding is established by the clear and unambiguous language of SCPA 1123, enacted in 1966, which, in subdivision (2) (i) (2), provides that the Public Administrator is authorized to receive process "as a necessary party" in "[e]very proceeding for the appointment of an administrator or for the probate of a will where it does not appear that the persons applying or named in the petition are all the distributees of the decedent or where it appears that such persons are related to

the decedent in the fourth degree of consanguinity [i.e., first cousins] or are more remotely related." Thus, the statute makes the Public Administrator a necessary party in the proceedings enumerated therein, including whenever the distributees are first cousins (or more remotely related), and directs that process issue to the Public Administrator in every such proceeding.

Subdivision (2) (i) (4) provides, "In all such proceedings the public administrator, in his discretion, may take any action in behalf of such person or persons as a person interested might." On the face of it, the intent of the Legislature, as it applies to the instant probate proceeding, could not be clearer: the Public Administrator was entitled to receive process because the decedent's distributees are unknown or are first cousins, and the Public Administrator, in her discretion, was entitled to take any action in behalf of the distributees as a person interested might.

The "action" the Public Administrator is authorized to take in behalf of the distributees under SCPA 1123 (2) (i) (4) necessarily includes the filing of objections pursuant to SCPA 1410, which provides, "Any person whose interest in property or in the estate of the testator would be adversely affected by the admission of the will to probate may file objections to the probate of the will or any portion thereof." The distributees of the decedent are adversely affected by the propounded will, as Morrissey's attorney conceded at oral argument, and have standing to file objections because they take less than their intestate share. (*Matter of Rockman*, 144 Misc 2d 728; *Matter of Niner*, 126 Misc 2d 1097, 1098.) Since the decedent's distributees could file objections to probate, under SCPA 1123 (2) (i) (4), the Public Administrator may do so in their behalf. (*See also*, 3 Cox-Arenson-Medina, NY Civ Prac: SCPA ¶ 1123.15, at 11-112 [2002] ["Where process has issued in a probate proceeding to the public administrator, he may * * * take such steps as he deems necessary * * *. [W]here he deems it necessary, he may file objections to the probate of the will"].)

Nor are the interests of the distributees in this proceeding remote. The Public Administrator's objections assert that the decedent lacked testamentary capacity and that the will was the product of Morrissey's fraud and undue influence. If only the objections grounded in fraud and undue influence are sustained, then the court may grant partial probate of those portions of the propounded will that do not benefit Morrissey. (*See, Matter of Lawson*, 75 AD2d 20, 29.) Since there is no alternate residuary beneficiary under the will, under partial

probate the residuary estate would pass to the distributees in intestacy.

Inasmuch as SCPA 1123 (2) (i) (2) applies when the distributees are first cousins—not just when the distributees are unknown—the argument that the Public Administrator lacks standing because petitioners and Morrissey have identified all of the decedent's distributees is unavailing. That subdivision provides that the Public Administrator is a necessary party in "[e]very" probate proceeding where the distributees are unknown "or" are first cousins or more remotely related. If we were to accept Morrissey's and petitioners' argument, the language following "or" would have to be ignored. Meaning and effect should be given to every word of a statute. (*Criscione v City of New York*, 97 NY2d 152, 157; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95, 104.) Where the language of a statute clearly and unambiguously expresses the will of the Legislature, there is no reason to resort to other means of interpretation. (*Matter of Smathers*, 309 NY 487, 494.)

In any event, even if the identity of the decedent's first cousins had some relevance, Morrissey's proof of kinship is inadequate. In addition to being unable to account for the whereabouts of the decedent's sister, Hildegarde, and niece, the genealogist provides no information as to what happened to many of the decedent's aunts, uncles and cousins. In this regard, Morrissey takes the position that the burden has shifted to the Public Administrator to prove the existence of unidentified first cousins of the decedent in order to maintain standing. The Public Administrator derives her standing from a statutory grant, SCPA 1123. *Matter of Dowd* (18 AD2d 715) and *Matter of Schindhelm* (11 AD2d 777), cited by Morrissey, are inapposite since both cases were decided before the enactment of SCPA 1123 and involved the issue of whether the Public Administrator had priority over identified first cousins to receive letters of administration. The Public Administrator's standing to file objections is based, not on the right to receive letters of administration, but on section 1123.

In arguing against permitting the Public Administrator to object in these circumstances, petitioners and Morrissey complain about the additional expense to the estate, with three sets of attorneys representing diverse interests besides the Public Administrator having already independently filed objections. Such policy concerns are better addressed not to the courts, but to the Legislature, which specifically added the provision about cousins when it enacted SCPA 1123 in 1966. We

note, however, the existence of countervailing public policy arguments as to elderly distant relatives residing abroad who might not be able actively to prosecute objections to the probate of a will. Indeed, the decedent's cousin, Kurt Simon, is a good example. Although he originally signed a waiver, Mr. Simon, after learning of his rights as a distributee, later withdrew his consent and authorized an attorney to appear for him and protect his interests. Two other distributees have written that they are unable to appear because of age and ill health. SCPA 1123 reflects a statutory recognition of the importance of the Public Administrator's presence and oversight in the prevention of fraud in those estates where the next of kin are unknown, elderly or unaware of their rights as distributees.

Accordingly, the order of the Surrogate's Court, New York County (Eve Preminger, S.), entered on or about November 14, 2001, which, insofar as appealed from, denied respondent Morrissey's motion to dismiss the Public Administrator's objections to the will propounded by petitioners, should be affirmed, without costs or disbursements.

NARDELLI, J.P., WALLACH, RUBIN and FRIEDMAN, JJ., concur.

Order, Surrogate's Court, New York County, entered on or about November 14, 2001, affirmed, without costs or disbursements.