08-4726-cv
Wilner v. National Security Agency

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: October 9, 2009                                    Decided: December 30, 2009)

Docket No. 08-4726-cv

THOMAS WILNER, GITANJALI GUTIERREZ, MICHAEL J. STERNHELL, JONATHAN WELLS DIXON, JOSHUA COLANGELO BRYAN, BRIAN J. NEFF, JOSEPH MARGULIES, SCOTT S. BARKER, JAMES E. DORSEY, ASMAH TAREEN, RICHARD A. GRIGG, THOMAS R. JOHNSON, GEORGE BRENT MICKUM IV, STEPHEN M. TRUITT, JONATHAN HAFETZ, TINA M. FOSTER, ALISON SCLATER, MARC D. FALKOFF, DAVID H. REMES, H. CANDACE GORMAN, CHARLES CARPENTER, JOHN A. CHANDLER and CLIVE STAFFORD SMITH,

        *Plaintiffs-Appellants*,

        v.

NATIONAL SECURITY AGENCY and DEPARTMENT OF JUSTICE,

        *Defendants-Appellees.*[*]

Before: CABRANES and LIVINGSTON, *Circuit Judges*, and KORMAN, *District Judge.*[**]

        Plaintiffs-appellants Thomas Wilner, et al., attorneys representing individuals detained by the

United States government at Guantánamo Bay, Cuba, appeal from a July 31, 2008 judgment of the

United States District Court for the Southern District of New York (Denise Cote, *Judge*) entered after a

June 25, 2008 opinion and order granting the motion for summary judgment of defendants-appellees

the National Security Agency ("NSA") and the Department of Justice ("DOJ") in plaintiffs' Freedom

---

    [*] The Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

    [**] The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

of Information Act ("FOIA") case. Plaintiffs submitted FOIA requests to the NSA and DOJ seeking records showing whether the government has intercepted plaintiffs' communications relating to the representation of their detainee clients. The NSA and DOJ served and filed so-called *Glomar* responses—neither confirming nor denying the existence of such records—pursuant to FOIA Exemptions 1 and 3. Whether, as a general matter, agencies may invoke the *Glomar* doctrine and whether, in particular, the NSA may invoke the *Glomar* doctrine in response to a FOIA request for records obtained under the Terrorist Surveillance Program ("TSP") are both questions of first impression for our Court.

We affirm the judgment of the District Court upholding the NSA's *Glomar* response and hold that: (1) a *Glomar* response is available to agencies as a valid response to FOIA requests; (2) an agency may issue a *Glomar* response to FOIA requests seeking information obtained pursuant to a "publicly acknowledged" intelligence program such as the TSP, at least when the existence of such information has not already been publicly disclosed; (3) the NSA properly invoked the *Glomar* doctrine in response to plaintiffs' request for information pursuant to FOIA Exemption 3; (4) the government's affidavits sufficiently allege the necessity of a *Glomar* response in this case, making it unnecessary for us to review or to require the District Court to review *ex parte* and *in camera* any classified affidavits that the NSA might proffer in support of its *Glomar* response; and (5) we find no evidence in the record that the NSA invoked *Glomar* for the purpose of concealing activities that violate the Constitution or are otherwise illegal. We agree with counsel for all parties that we need not reach the legality of the underlying TSP because that question is outside of the scope of this FOIA action.

Affirmed.

> KATHRYN A. SABBETH, Georgetown University Law Center Institute for Public Representation (David C. Vladeck, Georgetown University Law Center, *on the brief*; James R. Rubin, Karen Borg, Mark A. Schwartz, Butler Rubin

Saltarelli & Boyd LLP; Shayana Kadidal, Emilou MacLean, Center for Constitutional Rights, *of counsel) for Plaintiffs-Appellants Thomas Wilner et al.*

THOMAS M. BONDY, Department of Justice, Civil Division, Appellate Staff (Michael F. Hertz, Acting Assistant Attorney General, Lev L. Dassin, United States Attorney, *of counsel*, Douglas N. Letter, Department of Justice, Civil Division, Appellate Staff, *on the brief) for Defendants-Appellees National Security Agency and Department of Justice.*

Mark H. Lynch, Jennifer L. Saulino, Covington & Burling LLP, Washington, D.C., Meredith Fuchs, National Security Archive, Washington D.C., *for Amicus Curiae National Security Archive.*

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiffs-appellants Thomas Wilner, et al., attorneys representing individuals detained by the United States government at Guantánamo Bay, Cuba, appeal from a July 31, 2008 judgment of the United States District Court for the Southern District of New York (Denise Cote, *Judge*) entered after a June 25, 2008 opinion and order granting the motion for summary judgment of defendants-appellees the National Security Agency ("NSA") and the Department of Justice ("DOJ") in plaintiffs' Freedom of Information Act ("FOIA") case. Plaintiffs submitted FOIA requests to the NSA and DOJ seeking records showing whether the government has intercepted plaintiffs' communications relating to the representation of their detainee clients. The NSA and DOJ served and filed so-called *Glomar* responses—neither confirming nor denying the existence of such records—pursuant to FOIA Exemptions 1 and 3; the FBI also filed a similar response pursuant to FOIA Exemption 1.[1] Whether,

---

[1] Exemption 1 permits the nondisclosure of records relating to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 3, at the time this suit was filed, permitted nondisclosure of records relating to matters that are "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for

as a general matter, agencies may invoke the *Glomar* doctrine and whether, in particular, the NSA may invoke the *Glomar* doctrine in response to a FOIA request for records obtained under the Terrorist Surveillance Program ("TSP" or "program") are both questions of first impression for our Court.

We affirm the judgment of the District Court upholding the NSA's *Glomar* response and hold that (1) agencies may invoke the *Glomar* doctrine when responding to FOIA requests, and thus may refuse to confirm or deny the existence of the requested records to prevent cognizable harm under a FOIA exemption; (2) *Glomar* responses are available, when appropriate, to agencies when responding to FOIA requests for information obtained under a "publicly acknowledged" intelligence program, such as the TSP, at least when the existence of such information has not already been publicly disclosed; (3) the NSA properly issued a *Glomar* response to plaintiffs' request for information pursuant to FOIA Exemption 3 (specifically, pursuant to section 6 of the National Security Agency Act of 1959); (4) the government's affidavits sufficiently support its invocation of the *Glomar* doctrine in this case and we therefore decline to review ourselves or require the District Court to review *ex parte* and *in camera* any classified affidavits the NSA might proffer in further support of its *Glomar* response; and (5) we find no evidence in this record that the NSA invoked *Glomar* for the purpose of concealing illegal or unconstitutional activities. We agree with counsel for all parties that we need not determine the legality of the TSP because that question is beyond the scope of this FOIA action.

---

withholding or refers to particular types of matters to be withheld." *Id.* § 552(b)(3), *amended by* Pub. L. No. 111-83, § 564(b), 123 Stat. 2142, 2184 (Oct. 28, 2009).

**BACKGROUND**

Plaintiffs[2] are law professors and attorneys at "prominent law firms" and "established non-profit organizations," who represent individuals detained by the United States government at Guantánamo Bay, Cuba, for suspected terrorist activity. Appellants' Br. 5. Plaintiffs note that they began representing detainees after undergoing security clearance. Defendants are the NSA and the DOJ. The NSA is an agency within the Department of Defense that is charged with, among other tasks, collecting, processing, and disseminating signals intelligence ("SIGINT") information for national foreign intelligence purposes. NSA's SIGINT work includes intercepting communications necessary to national defense, national security, and the conduct of the foreign affairs of the United States. The DOJ is the cabinet department charged with law enforcement relevant to this case.

In the aftermath of the September 11, 2001 attacks on the United States by al Qaeda, President George W. Bush secretly authorized the TSP, which empowered the NSA "to intercept the international communications of people with known links to Al Qaeda and related terrorist organizations." George W. Bush, President's Radio Address (Dec. 17, 2005), excerpted in *Bush on the Patriot Act and Eavesdropping*, N.Y. Times, Dec. 18, 2005, at 43 (full transcript available at http://www.nytimes.com/2005/12/17/politics/17text-bush.html (last visited Oct. 28, 2009)) ("President Bush's Address"). President Bush described the TSP as "a highly classified program that is crucial to our national security. Its purpose is to detect and prevent terrorist attacks against the United States, our friends and allies." *Id.* It is not disputed that TSP surveillance was conducted without warrants and without oversight by the Foreign Intelligence Surveillance Court ("FISC"). The FISC is a

---

[2] The parties submitted a stipulation dated October 13, 2009, withdrawing claims of appellant Anne Castle without costs and without attorneys' fees pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure, as a result of her appointment to the position of Assistant Secretary of the Interior for Water and Science. The claims of the other remaining appellants are unaffected by the stipulation.

United States court that was established by the Foreign Intelligence Surveillance Act of 1978 ("FISA") and has "jurisdiction to hear applications for and grant orders approving electronic surveillance anywhere within the United States under the procedures set forth" in the FISA, 50 U.S.C. § 1803 (a)(1), and "to hear applications for and grant orders approving a physical search for the purpose of obtaining foreign intelligence information anywhere within the United States under the procedures set forth" in the FISA. 50 U.S.C. § 1822 (c).

The TSP served as an "early warning" system intended to detect and prevent further terrorist attacks by intercepting communications between known and potential terrorists and their affiliates. To intercept a communication under the TSP, one of the parties to the communication had to be located outside of the United States, and there had to be a reasonable basis to conclude that one party to the communication was a member of al Qaeda, affiliated with al Qaeda, or a member of an affiliated organization. The NSA conducted TSP surveillance in secret until, following news reports revealing the program, President Bush publicly acknowledged the existence of the TSP in a radio address on December 17, 2005. On January 17, 2007, Attorney General Alberto Gonzales announced that TSP electronic surveillance would henceforth be subject to the approval of the FISC and that the President's original authorization of the TSP had lapsed. The TSP itself has ceased to exist and, as counsel for the government noted at oral argument, to the extent that any similar electronic surveillance is taking place, that activity "shifted under the rubric of the FISA court." Tr. 12-13.

By separate letters to the NSA and the DOJ dated January 18, 2006, plaintiffs requested, pursuant to FOIA, seven categories of records.[3] Only the first of plaintiffs' FOIA requests ("Request

---

[3] As the District Court summarized:

FOIA was enacted in 1966 "to improve public access to information held by government agencies." *Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*, 585 F.2d 1382, 1384 (2d Cir. 1972). It "expresses a public policy in favor of disclosure

6

No. 1") is at issue on this appeal.[4]  Request No. 1 sought "records obtained or relating to ongoing or completed warrantless electronic surveillance or physical searches regarding, referencing or concerning any of the plaintiffs."

In response to plaintiffs' Request No. 1, the NSA invoked the *Glomar* doctrine—meaning that it refused to confirm or deny whether the agency possessed records responsive to the request.  This lawsuit followed.   Plaintiffs' complaint alleged that they "have a statutory right to the records that they seek, and there is no legal basis for the defendants' refusal to disclose them," and sought principally a declaration that defendants' refusal to disclose the requested records was unlawful and an order compelling defendants to produce the records without further delay.  J.A. 8 (Second Am. Compl. for Declaratory and Injunctive Relief).  The NSA and DOJ filed a Motion for Partial Summary Judgment on the *Glomar* issue.

---

so that the public might see what activities federal agencies are engaged in."  *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 143 (2d Cir. 1994).  FOIA requires a federal agency to disclose records in its possession unless they fall under one of nine enumerated and exclusive exemptions. 5 U.S.C. § 552(a)(3)-(b); *see also Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).  The statutory exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."  *Dep't of the Interior and Bur. of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citation omitted).  The exemptions are thus to be "given a narrow compass."  *Id.* (citation omitted); *see also Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005).

*Wilner v. Nat'l Sec. Agency*, No. 07 Civ. 3883, 2008 WL 2567765, at *2 (S.D.N.Y. June 25, 2008).

[4] The NSA responded to plaintiffs' other requests by claiming that the records that plaintiffs sought were exempt under FOIA.  Plaintiffs challenged both the NSA's refusal to disclose those records under FOIA as well as its *Glomar* response to Request No. 1.  Upon plaintiffs' motion, the District Court bifurcated the two claims and temporarily suspended its consideration of plaintiffs' non-*Glomar* challenges.  The District Court then granted certification under Rule 54(b) of the Federal Rules of Civil Procedure on plaintiffs' *Glomar* challenge so that plaintiffs could pursue this appeal.  *Wilner v. Nat'l Sec. Agency*, No. 07 Civ. 3883, 2008 WL 2949325 (S.D.N.Y. July 31, 2008).

In an opinion and order of June 25, 2008, the District Court granted defendants' motion for partial summary judgment, holding that (1) the NSA was permitted to provide a *Glomar* response to plaintiffs' FOIA requests for information potentially acquired through electronic surveillance because the requested records, if they exist, are protected under FOIA Exemption 3 (specifically, pursuant to section 6 of the National Security Agency Act of 1959[5]); (2) revealing whether or not the requested documents exist would not only violate particular statutes, but would also undermine national security; (3) the NSA did not provide a *Glomar* response for the purpose of concealing illegality; and (4) any challenge to the legality of the underlying TSP was beyond the scope of plaintiff's FOIA suit.

## DISCUSSION

The issues on appeal are whether, in a FOIA action, a court may uphold an agency's invocation of the *Glomar* doctrine where the Executive Branch has officially acknowledged the existence and contours of a program concerning which records are sought and where the agency claims the specific documents requested fall under, or would fall under, identified FOIA exemptions. Accordingly, we consider first whether to adopt the *Glomar* doctrine in our Circuit and second, if it is in fact available, whether the *Glomar* doctrine was properly invoked in this case.

### I. The *Glomar* Doctrine

As the District Court noted in its opinion, "[t]he Second Circuit has never opined on the *Glomar* Response." *Wilner*, 2008 WL 2567765, at *2 n.2. We take this opportunity now to address the availability of the *Glomar* doctrine to an agency when it responds to a FOIA request.

The *Glomar* doctrine originated in a FOIA case concerning records pertaining to the Hughes Glomar Explorer, an oceanic research vessel. *See Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976). In

---

[5] Section 6 states that no "law . . . shall be construed to require the disclosure . . . of any information with respect to the activities" of the NSA. National Security Agency Act of 1959, Pub. L. No. 86-36, § 6, 73 Stat. 63, 64 (codified at 50 U.S.C. § 402 note).

*Phillippi*, the Central Intelligence Agency ("CIA") claimed that the "existence or nonexistence of the requested records was itself a classified fact exempt from disclosure under . . . FOIA." *Id.* at 1012. The CIA then responded to the plaintiff's FOIA request by asserting that, "in the interest of national security, involvement by the U.S. government in the activities which are the subject matter of [plaintiff's] request can neither be confirmed nor denied." *Id.* This principle—that an agency may, pursuant to FOIA's statutory exemptions, refuse to confirm or deny the existence of certain records in response to a FOIA request—has since become known as the *Glomar* doctrine. *See, e.g., Hunt v. CIA*, 981 F.2d 1116, 1117-18 (9th Cir. 1992). The government urges us to adopt the *Glomar* doctrine as Circuit law, and plaintiffs do not object to our doing so. Mindful that mere stipulation by the parties, standing alone, cannot serve as the basis for our conclusions of law, we turn to that question.

The *Glomar* doctrine and government use of the *Glomar* response is firmly established in other Circuits. *See, e.g., Larson v. Dep't of State*, 565 F.3d 857, 861-62, 870 (D.C. Cir. 2009) (upholding the NSA's use of the *Glomar* response to plaintiffs' FOIA requests regarding past violence in Guatemala pursuant to FOIA Exemptions 1 and 3); *Bassiouni v. CIA*, 392 F.3d 244, 246 (7th Cir. 2004) (noting that the *Glomar* doctrine is well established); *Minier v. CIA*, 88 F.3d 796, 800-02 (9th Cir. 1996) (permitting the CIA to invoke the *Glomar* doctrine in response to a FOIA request seeking employment records of an alleged CIA operative); *cf. Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 436-37 (1st Cir. 2006) (endorsing the *Glomar* doctrine though evaluating the case as an ordinary FOIA suit after assuming the existence of documents that plaintiff requested under FOIA). The *Glomar* doctrine is well settled as a proper response to a FOIA request because it is the only way in which an agency may assert that a particular FOIA statutory exemption covers the "existence or nonexistence of the requested records" in a case in which a plaintiff seeks such records. *Phillippi*, 546 F.2d at 1012; *see also Larson*, 565 F.3d at

9

861 ("[FOIA's] exemptions cover not only the content of the protected government records but also the fact of their existence or nonexistence, if that fact itself properly falls within the exemption.")

We now join our sister Circuits in holding that "an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a[ ] FOIA exception." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982). To properly employ the *Glomar* response to a FOIA request, an agency must "tether" its refusal to respond, *Wilner*, 2008 WL 2567765, at *3, to one of the nine FOIA exemptions—in other words, "a government agency may . . . refuse to confirm or deny the existence of certain records . . . if the FOIA exemption would itself preclude the *acknowledgment* of such documents." *Minier*, 88 F.3d at 800 (emphasis added).

An agency "resisting disclosure" of the requested records "has the burden of proving the applicability of an exemption." *Id.* "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions." *Id.* (internal quotation marks and citation omitted). As the *Phillippi* Court explained, a responsive affidavit should "explain[ ] in as much detail as possible the basis for [the agency's] claim that it can be required neither to confirm nor to deny the existence of the requested records." *Phillippi*, 546 F.2d at 1013.

In evaluating an agency's *Glomar* response, a court must accord "substantial weight" to the agency's affidavits, "provided [that] the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of . . . bad faith." *Minier*, 88 F.3d at 800 (internal quotation marks omitted). The court should "attempt to create as complete a public record as is possible. . . . The [a]gency's arguments should then be subject to testing by [plaintiff], who should be allowed to seek appropriate discovery when necessary . . . . Only after the issues have been identified by this process should the District Court, if necessary, consider arguments or information [*ex parte* and *in camera*] which the [a]gency is unable to make public." *Phillippi*, 546 F.2d at 1013.

## II. The *Glomar* Doctrine in This Case

Although plaintiffs do not take issue with the *Glomar* doctrine as a general rule or as a permissible response to some FOIA requests, they contend that the NSA's invocation of the *Glomar* doctrine in this particular case was inappropriate because (1) the TSP is no longer a "secret" national security program, (2) any responsive records, if they exist, are not exempt under FOIA, and (3) the NSA's affidavits in support of its invocation of *Glomar*, which are part of the public record, are insufficient to sustain the agency's burden of proof.

We review *de novo* a district court's grant of summary judgment in FOIA litigation. *See, e.g.*, *Tigue v. Dep't of Justice*, 312 F.3d 70, 75 (2d Cir. 2002). We also "conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994). The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure. *See id.*; *see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) ("[T]he defending agency has the burden of showing . . . that any withheld documents fall within an exemption to the FOIA."). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812. The "[a]ffidavits submitted by an agency are accorded a presumption of good faith." *Id.* (internal quotation marks omitted).

### A. *Glomar* Response to Requests for Information Gathered Pursuant to the TSP

Plaintiffs first argue that *Glomar* may be invoked "only to preserve the secrecy of a covert intelligence program or secret intelligence sources and methods," Appellants' Br. 12, and that the NSA inappropriately provided a *Glomar* response in this case because the TSP is no longer a secret program

11

in light of the government's public acknowledgment of its existence and purpose following its controversial disclosure by the news media and ensuing public controversy.  Whether the *Glomar* doctrine may be invoked in response to a FOIA request for records obtained under the TSP is also an issue of first impression for our Court.

We now hold that, as a general rule, (1) an agency may provide a *Glomar* response to FOIA requests for information gathered under a program whose existence has been publicly revealed, and may do so specifically with respect to information gathered under the TSP, and (2) that such a response will be reviewed in the same manner as any other *Glomar* response to a FOIA request.  The government's decision to make public the existence of the TSP does not alter the rationale for allowing an agency to provide a *Glomar* response—namely, to prevent the sort of harm that a FOIA exemption is designed to prevent.

The record is clear that, although the general existence of the TSP has been officially acknowledged, the specific methods used, targets of surveillance, and information obtained through the program have not been disclosed.  President Bush announced that he had authorized the NSA to "intercept the international communications of people with known links to Al Qaeda and related terrorist organizations."  President Bush's Address, *supra*.   Additionally, CIA Director[6] Michael Hayden noted that the general procedures the NSA implements in conducting electronic surveillance were also applicable to the TSP.  He also indicated that, under the TSP, the NSA was targeting communications where one party is outside of the United States.  General Michael V. Hayden, What American Intelligence & Especially the NSA Have Been Doing To Defend the Nation, Address to the National

_____

[6]At the time of the cited speech, January 23, 2006, Gen. Hayden was the Principal Deputy Director of National Intelligence.  *See* What American Intelligence & Especially the NSA Have Been Doing To Defend the Nation, Address to the National Press Club (Jan. 23, 2006), *available at* http://www.dni.gov/speeches/20060123_speech.htm (last visited Dec. 22, 2009).

Press Club (Jan. 23, 2006), *available at* http://www.dni.gov/speeches/20060123_speech.htm (last visited Dec. 22, 2009). However, at no time have the President or other members of the national government in either the Bush or Obama Administrations publicly confirmed or denied that particular persons were targeted or subject to surveillance.

The *Glomar* doctrine is applicable in cases "where to answer the FOIA inquiry would cause harm cognizable under a[ ] FOIA exception," *Gardels*, 689 F.2d at 1103—in other words, in cases in which the existence or nonexistence of a record is a fact exempt from disclosure under a FOIA exception. An agency is therefore precluded from making a *Glomar* response if the existence or nonexistence of the specific records sought by the FOIA request has been the subject of an official public acknowledgment. If the government has admitted that a specific record exists, a government agency may not later refuse to disclose whether that same record exists or not. *See Wolf v. CIA*, 473 F.3d 370, 378-79 (D.C. Cir. 2007); *cf. Hudson River Stoop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 421 (2d Cir. 1989).

Here, although the public is aware that the TSP exists, the government has found it necessary to keep undisclosed the details of the program's operations and scope—the subject of plaintiffs' FOIA request in this case. The fact that the public is aware of the program's existence does not mean that the public is entitled to have information regarding the operation of the program, its targets, the information it has yielded, or other highly sensitive national security information that the government has continued to classify. Indeed, the fact that the TSP's existence has been made public reinforces the government's continuing stance that it is necessary to keep confidential the details of the program's operations and scope.

13

We therefore hold that, as a threshold matter, and as a general rule, an agency may invoke the *Glomar* doctrine in response to a FOIA request regarding a publicly revealed matter. An agency only loses its ability to provide a *Glomar* response when the existence or nonexistence of the particular records covered by the *Glomar* response has been officially and publicly disclosed. We hold, in particular, that an agency may invoke the *Glomar* doctrine with respect to the TSP, at least with respect to those aspects of the program that have not been the subject of such disclosures. Accordingly, we now turn our attention to the question of whether the NSA in this particular case has met its burden to justify its *Glomar* response.

### B. The NSA's Invocation of *Glomar* Pursuant to FOIA Exemptions in the Instant Case

Plaintiffs contend that even if the *Glomar* doctrine may be invoked in the context of a TSP-related FOIA request, the records plaintiffs seek here are not exempt from public disclosure under FOIA. Accordingly, plaintiffs argue, confirming or denying the existence of these records is not exempt from public disclosure. We agree with the District Court that, in order to invoke the *Glomar* response to a FOIA request, an agency must "tether" its refusal, *Wilner*, 2008 WL 2567765, at *3, to one of the nine FOIA exemptions. In other words, "a government agency may . . . refuse to confirm or deny the existence of certain records . . . if the FOIA exemption would itself preclude the acknowledgment of such documents." *Minier*, 88 F.3d at 800. We adopt the District Court's careful and well-reasoned analysis, and affirm its judgment, including the holding that NSA's *Glomar* response was properly "tethered" to FOIA Exemption 3, under section 6 of the National Security Agency Act of 1959.

The NSA tied its *Glomar* response to FOIA Exemptions 1 and 3. Exemption 1 permits the nondisclosure of records that are "(A) specifically authorized under criteria established by an Executive

order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). In invoking Exemption 1, the NSA specifically relies on Executive Order 12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995), as amended by Executive Order 13,292, 68 Fed. Reg. 15,315 (Mar. 25, 2003), which provides that an agency may classify records relating to, *inter alia*, "intelligence activities (including special activities), intelligence sources or methods, or cryptology," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security, which includes defense against transnational terrorism." 68 Fed. Reg. at 15,317. Under Executive Order 12,958, as amended, an agency may classify information when it "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage." *Id.* at 15,315. As the District Court noted, "the Executive Order specifically countenances the *Glomar* Response, permitting a classifying agency to 'refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors.' *Id.* at 15324." *Wilner*, 2008 WL 2567765, at *3.

FOIA Exemption 3 applies to records "specifically exempted from disclosure by statute," provided that the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). In invoking Exemption 3, the NSA relies on three statutes that preclude disclosure of the documents plaintiffs seek. First, the NSA argues that the documents are exempt under section 6 of the National Security Agency Act of 1959 ("NSAA"), Pub. L. No. 86-36, § 6, 73 Stat. 63, 64 (codified at 50 U.S.C. § 402 note), which provides that:

15

> [N]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, of any information with respect to the activities thereof, or of the names, titles, salaries, or number of persons employed by such agency.

Second, the NSA relies on section 102(A)(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (codified at 50 U.S.C. § 403-l(i)(1)), which requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." Third, the NSA invokes section 798 of Title 18 of the U.S. Code, which criminalizes disclosure of information "concerning, *inter alia*, the communication intelligence activities of the United States."

Because defendants need only proffer one legitimate basis for invoking the *Glomar* response and FOIA Exemptions 1 and 3 are separate and independent grounds in support of a *Glomar* response, we consider only the applicability of FOIA Exemption 3. *See Larson*, 565 F.3d at 862-63, ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other."). The District Court held that the NSA's "affidavits provide the requisite detailed explanations for withholding the documents requested in FOIA Request No. 1 under FOIA Exemption 3. Specifically, defendants have demonstrated that acknowledging the existence or nonexistence of the information entailed in FOIA Request No. 1 would reveal the NSA's organization, functions, and activities, in contravention of Section 6 of the NSAA." *Wilner*, 2008 WL 2567765, at *4. We agree with the District Court's holding with respect to FOIA Exemption 3, and we adopt its thorough analysis, which for convenience we set forth in full below:

> In *CIA v. Sims*, 471 U.S. 159 (1985), the Supreme Court adopted a two-pronged approach to evaluating an agency's invocation of FOIA Exemption 3: First, the court must consider whether the statute identified by the agency is a statute of exemption as contemplated by Exemption 3. Second, the court must consider whether the withheld material satisfies the criteria of the exemption statute. *Id.* at 167; *see Fitzgibbon v. C.I.A.*, 911 F.2d 755, 761 (D.C. Cir.

16

1990). As the D.C. Circuit has observed, "[e]xemption 3 presents considerations distinct and apart from the other eight exemptions" inscribed in FOIA. *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987):

> Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.

*Id.*

Defendants argue, and plaintiffs do not dispute, that Section 6 of the NSAA qualifies as an exemption statute under Exemption 3. The D.C. Circuit—the only circuit court to have considered this question—concurs. *See Founding Church of Scientology, Inc. v. NSA*, 610 F.2d 824, 828 (D.C. Cir. 1979); *Hayden v. NSA*, 608 F.2d 1381, 1389 (D.C. Cir. 1979). Indeed, the language of Section 6 makes quite clear that it falls within the scope of Exemption 3. Section 6 states that no "law . . . shall be construed to require the disclosure . . . of any information with respect to the activities" of the NSA. Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402. Section 6 thus "specifically exempt[s]" certain information "from disclosure." 5 U.S.C. § 552(b)(3).

*Wilner*, 2008 WL 2567765, at *4 (alterations in original).

### C. Sufficiency of the NSA's Affidavits

#### 1. The NSA's Affidavits in This Case

As we stated above, the agency resisting disclosure has the burden of proving the applicability of a FOIA exemption and may "may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions." *Minier*, 88 F.3d at 800 (internal quotation marks omitted). At oral argument before our Court, plaintiffs argued that the NSA had not met its burden and that the government's declarations were inadequate to support its invocation of *Glomar*. We are not entirely convinced that plaintiffs preserved this argument,[7] but even if we were to reach the

---

[7] The District Court noted in its opinion that "[p]laintiffs do not challenge the legal basis for defendants' Glomar Response, nor do they challenge the sufficiency—either in form or substance—of defendants' affidavits in support of their reliance on FOIA Exemption 3 and Section 6 of the NSAA." *Wilner*, 2008 WL 2567765, at *6. In response to our request that plaintiffs provide citations to the record showing where they had made these arguments in proceedings before the District Court, plaintiffs submitted a supplemental letter dated October 14, 2009. Although plaintiffs provide citations to places in the record where they stated the rule that the burden of proof

17

merits of whether the government's affidavits are sufficient, we agree with the District Court that the NSA has met its burden in this case.

An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit, and we review the agency's justifications therein *de novo*. *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003); *see also* 5 U.S.C. § 552(a)(4)(B). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith. Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson*, 565 F.3d at 862 (internal quotation marks and citations omitted).

In evaluating an agency's *Glomar* response, a court must accord "substantial weight" to the agency's affidavits." *Minier*, 88 F.3d at 800 (internal quotation marks omitted). In according such weight to the affidavits on which the District Court relied, we conclude that they provide sufficient detail that the question of the existence or nonexistence of the requested records falls within Exemption 3 of FOIA. The NSA asserts that it cannot provide any more information without doing cognizable harm, and we agree. The affidavits sufficiently establish that nondisclosure is appropriate—perhaps essential—for reasons of national security and confidentiality. "Minor details of intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of jigsaw puzzle, [each detail] may aid in piecing together other bits of

---

rests with the agency resisting disclosure, it seems that plaintiffs did not preserve their specific argument that the NSA's affidavits were insufficient to sustain its burden in this case. However, because the District Court addressed the matter thoroughly in its opinion, we rely on its disposition of the merits.

information even when the individual piece is not of obvious importance in itself." *Larson*, 565 F.3d at 864 (alterations in original).

In the interest of thoroughness, the District Court provided a detailed explanation and analysis of the affidavits submitted by the NSA to support its claim that *even confirming or denying the existence* of the requested records would cause a harm that the exemptions to FOIA seek to avoid. We adopt that analysis as follows:

> Defendants contend that "[a]cknowledging the existence or non-existence of the information requested by Plaintiffs' FOIA Request No. 1 would unquestionably reveal NSA's organization, functions and activities by revealing the success or failure of NSA's activities." In support of this contention, they have submitted affidavits from Joseph J. Brand, Associate Director, Community Integration, Policy and Records for the NSA; J. Michael McConnell, Director of National Intelligence; and David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation.
>
> In his affidavit, Brand avers that the TSP is a SIGINT program "that [is] critical to the national security of the United States." Operation of the TSP "depends upon the collection of electronic communications, which can be easily compromised if targets are made aware of NSA capabilities and priorities." Giving the Glomar Response to FOIA Request No. 1 was essential, Brand attests, because
>
>> [a]cknowledging the existence or non existence of those individuals or organizations subject to surveillance would provide our adversaries with critical information about the capabilities and limitations of the NSA, such as the types of communications that may be susceptible to NSA detection. Confirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods.
>
> Similarly, McConnell states that "[t]o confirm or deny whether someone is a target of surveillance . . . would reveal to our adversaries that an individual may or may not be available as a secure means for communicating or, more broadly, the methods being used to conduct surveillance." The disclosure of such information would run afoul of Section 6 of the NSAA, Brand contends, because it "would reveal the sources of intelligence . . . and would tend to reveal the methods by which such intelligence is collected . . . ." Further, "confirmation or denial of this information would reveal the limitations of NSA SIGINT capabilities." Even the disclosure of "what appears to be the most innocuous information about the TSP" poses a

19

threat to national security, McConnell avers, because it might permit our adversaries "to piece together sensitive information about how the Program operated, the capabilities, scope and effectiveness of the Program and our current capability, which would be utilized by the enemy to allow them to plan their terrorist activities more securely."

These affidavits demonstrate that the documents sought in FOIA Request No. 1 relate to "the organization or any function of the National Security Agency" and seek "information with respect to the activities thereof," Pub. L. No. 86-36, § 6, 73 Stat. 63, 64, codified at 50 U.S.C. § 402, all of which are exempted from disclosure by Section 6 of the NSAA. The affidavits aver that the TSP is a SIGINT program, and "signals intelligence is one of [NSA's] primary functions"; the release of the SIGINT information would "disclose information with respect to [NSA] activities, since any information about an intercepted communication concerns an NSA activity." *Hayden*, 608 F.2d at 1389. Moreover, the affidavits explain in "detailed, nonconclusory" fashion, *Wood v. FBI*, 432 F.3d 78, 85 (2d Cir. 2005), why the Glomar Response is appropriate. The affidavits thus "giv[e] reasonably detailed explanations why any withheld documents fall within an exemption," and are therefore "sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812.

*Wilner*, 2008 WL 2567765, at *4-5.

## 2. NSA's Burden of Proof Under Section 6 of the NSAA Generally

An agency invoking *Glomar* must show not only that the requested records would be exempt from disclosure, but also that "the FOIA exemption would itself preclude the acknowledgment [even confirming or denying the existence] of such documents." *Minier*, 88 F.3d at 800. Congress's broad language in section 6 of the NSAA eases that burden for the agency, as it exempts from disclosure any "information with respect to the activities" of that agency. Pub. L. No. 86-36, § 6. Confirming or denying the *mere existence* of specific records in a general surveillance program would logically be both confirming or denying that the NSA was targeting a specific individual *and* confirming or denying that the NSA is conducting a general surveillance program. Either disclosure would be "information with respect to the activities" of the NSA and therefore exempt under FOIA. *Id.* Even if the NSA affidavits, standing alone, are insufficient, as plaintiffs argue, the very nature of their request—which seeks records concerning whether their communications were monitored by the NSA—establishes that

20

*any response* would reveal "information with respect to the activities" of the NSA. Because the NSA is exempt under the NSAA from revealing such information, FOIA Exemption 3 also applies and the NSA's *Glomar* response was therefore justified.

### 3. Bad Faith Invocation of the *Glomar* Doctrine

Having concluded that the affidavits more than sufficiently support the NSA's claim that FOIA Exemption 3 encompasses confirmation or denial of the existence of the requested records, we now consider plaintiffs' claims that the NSA invoked the *Glomar* doctrine for the purpose of concealing illegal or unconstitutional actions. We cannot base our judgment on mere speculation that the NSA was attempting to conceal the purported illegality of the TSP by providing a *Glomar* response to plaintiffs' requests. A finding of bad faith must be grounded in "evidence suggesting bad faith on the part of the [agency]." *Larson*, 565 F.3d at 864. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* at 862 (internal quotation marks omitted). After reviewing the record before us, we agree with the District Court that the agency's affidavits and justification are both logical and plausible. We do not find any evidence that even arguably suggests bad faith on the part of the NSA, or that the NSA provided a *Glomar* response to plaintiffs' requests for the purpose of concealing illegal or unconstitutional actions.

### III. *Ex Parte, In Camera* Review of Responsive Records, If Any Exist

Plaintiffs argue that, even if the government cannot publicly produce any responsive records, a court presented with a *Glomar* response should conduct *ex parte* and *in camera* review of any records (assuming they exist) to provide a more "probing" judicial review. We disagree. A court should only consider information *ex parte* and *in camera* that the agency is unable to make public if questions remain after the relevant issues have been identified by the agency's public affidavits and have been tested by plaintiffs. *See Phillippi*, 546 F.2d at 1013.

We are mindful of our legal system's preference for open court proceedings, *see, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571 (1980); *see also In re N.Y. Times Co.*, 577 F.3d 401, 410 n.4 (2d Cir. 2009) (noting that although there are circumstances in which a nonpublic proceeding is appropriate, "courts seek to balance the need for transparency in the judiciary with the effective protection of sensitive information"), and there is no compelling reason in this case to deviate from this general practice by conducting or requiring an *ex parte*, *in camera* review of any classified materials the agency might present in justification of its response. We join our sister Circuit in holding that, "[i]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson*, 565 F.3d at 865.

When, as here, a court finds that the government's public affidavits sufficiently allege the necessity of a *Glomar* response, *ex parte* and *in camera* review of additional, confidential material is unnecessary and beyond the role assigned to the judiciary by applicable law. "[W]e have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927. We affirm our "deferential posture in FOIA cases regarding the uniquely executive purview of national security." *Larson*, 565 F.3d at 865 (internal quotation marks omitted). Recognizing the relative competencies of the executive and judiciary, we believe that it is bad law and bad policy to "second-guess the predictive judgments made by the government's intelligence agencies," *id.* (internal quotation marks omitted), regarding questions such as whether disclosure of terrorist-related surveillance records would pose a threat to national security.

In any event, a "searching review" of the kind suggested by plaintiffs would not provide plaintiffs with the information they seek—knowledge of whether they were or are being surveilled in their interactions with their detainee clients. Plaintiffs claim that the purpose of gaining this information is to determine whether or not to alter the way in which they represent and interact with their clients. Appellant's Br. 9; Tr. 4-5. Whether the NSA asserts in public affidavits, or whether the court finds *in camera*, that the NSA's *Glomar* response was indeed sufficient (as it invariably would do, given the breadth of the NSAA), plaintiffs in the end would have the same answer—neither confirmation nor denial of whether any responsive records exist. We conclude that the government's affidavits were sufficiently specific in this case and we therefore decline plaintiffs' invitation to conduct an *ex parte*, *in camera* review of any classified material of the agency providing further justification for failing to confirm or deny the existence of any records pertaining to plaintiff attorneys' communications with their detainee clients.

## IV. Legality of the Underlying Terrorist Surveillance Program

Finally, plaintiffs argue that the *Glomar* doctrine may not be invoked to conceal illegal or unconstitutional activities. As we have stated, we are unaware of any evidence that the NSA invoked the *Glomar* doctrine in order to conceal illegal or unconstitutional activities; nor do we have reason to believe that the NSA was acting in bad faith in providing a *Glomar* response. *See Minier*, 88 F.3d at 800.

In their briefs, plaintiffs contend the NSA's refusal to disclose whether it obtained any records under the TSP related to plaintiffs is unlawful because any such records, if they exist, would have been obtained in violation of the U.S. Constitution. Specifically, plaintiffs argue that (1) the warrantless interception of plaintiff lawyers' communications violates the First, Fourth, and Fifth Amendments, (2) the threat of monitoring attorney-client conversations violates the constitutional rights of the detainees, and (3) warrantless surveillance violates the separation of powers. Defendants respond that the legality

23

of the TSP is a separate matter from a FOIA challenge,[8] Appellee's Br. 32-36; Tr. 11, a point that plaintiffs conceded at oral argument, Tr. 23 ("And again, we are not asking this Court to reach the question of [the merits of the argument that the TSP is illegal]. We don't think that's necessary here.").

We agree with counsel for all parties that we need not reach the legality of the underlying Terrorist Surveillance Program because that question is beyond the scope of this FOIA action. In declining to address the legality of the program in the context of suits seeking disclosure of secret records, we are not alone; several of our sister Circuits have entertained TSP-related cases and have declined to reach the merits of the TSP itself. *See, e.g.*, *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1205 (9th Cir. 2007); *ACLU v. NSA*, 493 F.3d 644 (6th Cir. 2007) (dismissing the case because plaintiffs could not establish their standing to sue without obtaining classified information, the disclosure of which would jeopardize national security); *cf. United States. v. Abu Ali*, 528 F.3d 210, 257-58 (4th Cir. 2008) (not reaching the issue of the legality of the TSP in the context of a criminal challenge to warrantless surveillance under the program).

## CONCLUSION

We affirm the judgment of the District Court and hold that: (1) a *Glomar* response is available to agencies as a valid response to FOIA requests; (2) an agency may issue a *Glomar* response to FOIA requests seeking information obtained under a "publicly acknowledged" intelligence program such as

---

[8] The legality of the TSP was challenged in a separate litigation in the United States District Court for the District of Oregon (the District Court certified a portion of the litigation for appeal to the Ninth Circuit but, as noted hereafter, the Court of Appeals found that the plaintiff lacked standing to challenge the TSP), in which the government asserted the state-secrets privilege. *Al-Haramain Islamic Found., Inc. v. Bush*, 451 F. Supp. 2d 1215 (D. Or. 2006). There is also litigation pending in the Northern District of California which consolidates a number of TSP-related cases. *In re NSA Telecomm. Records Litig.*, MDL No. 06-1791 (N.D. Cal). At oral argument in this case, counsel for the government stated its intention, with respect to those issues, to continue to assert the state-secrets privilege.

the Terrorist Surveillance Program at least when the existence of such information has not already been publicly disclosed; (3) the NSA properly invoked the *Glomar* doctrine in response to plaintiffs' request for information pursuant to FOIA Exemption 3; (4) the government's affidavits sufficiently allege the necessity of a *Glomar* response in this case, making it unnecessary for us to review, or to require the District Court to review, *ex parte* and *in camera* any classified affidavits that the NSA might provide to support its *Glomar* response; and (5) there is no evidence in this record that suggests, much less shows, that the NSA invoked *Glomar* for the purpose of concealing activities that violate the Constitution or are otherwise illegal. We agree with counsel for all parties that we need not reach the legality of the underlying Terrorist Surveillance Program because that question is beyond the scope of this FOIA action.

Accordingly, the judgment of the District Court is **AFFIRMED.**