ACLU v. Dep't of Justice

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

—————————————

August Term, 2011

(Argued: March 9, 2012          Decided: May 21, 2012)

Docket Nos. 10-4290-cv(L), 10-4289-cv(CON), 10-4647-cv(XAP),
10-4668-cv(XAP)

—————————————

AMERICAN CIVIL LIBERTIES UNION, CENTER FOR CONSTITUTIONAL RIGHTS,
INCORPORATED, PHYSICIANS FOR HUMAN RIGHTS, VETERANS FOR COMMON SENSE,
VETERANS FOR PEACE,

*Plaintiffs-Appellees-Cross-Appellants*,

—v.—

DEPARTMENT OF JUSTICE, and its component Office of Legal
Counsel, CENTRAL INTELLIGENCE AGENCY,

*Defendants-Appellants-Cross-Appellees*,

DEPARTMENT OF DEFENSE, and its components Department of Army,
Department of Navy, Department of Air Force, Defense
Intelligence Agency, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF
STATE, DEPARTMENT OF JUSTICE components Civil Rights Division,
Criminal Division, Office of Information and Privacy, Office
of Intelligence, Policy and Review, Federal Bureau of
Investigation,

*Defendants*.

—————————————

Before:

WESLEY, CARNEY, *Circuit Judges*, and CEDARBAUM, *District Judge*.[*]

Appeal and cross-appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*), granting the parties' motions for partial summary judgment with respect to Plaintiffs' Freedom of Information Act request for the disclosure of records concerning the treatment of detainees in United States custody abroad since September 11, 2001. The Government challenges the portion of the judgment requiring it to disclose information in two memoranda pertaining to what the Government considers a highly classified, active intelligence method. Plaintiffs challenge the judgment insofar as it sustained the Government's withholding of certain records relating to the use of waterboarding and a photograph of a high-value detainee in custody. We agree with the district court that the materials at issue in Plaintiffs' cross-appeal are exempt from disclosure. The district court erred, however, in requiring the Government to disclose the classified information redacted from the two memoranda.

**AFFIRMED** in part and **REVERSED** in part.

---

TARA M. LA MORTE, Assistant United States Attorney (Amy A. Barcelo, Sarah S. Normand, Assistant United States Attorneys, *on the brief*), for Preet Bharara, United States Attorney for the Southern District of New York, New York, NY; (Tony West, Assistant Attorney General, Ian Heath Gershengorn, Deputy Assistant Attorney General, Douglas N. Letter, Matthew M. Collette, Attorneys, Civil Division, Appellate Staff, Department of Justice, Washington, D.C., *on the brief*), *for Defendants-Appellants-Cross-Appellees*.

---

[*] The Honorable Miriam Goldman Cedarbaum, of the United States District Court for the Southern District of New York, sitting by designation.

ALEXANDER A. ABDO (Jameel Jaffer, Judy Rabinovitz, American Civil Liberties Union Foundation, New York, NY; Lawrence S. Lustberg, Alicia L. Bannon, Gibbons, P.C., Newark, NJ; Michael Ratner, Gitanjali Gutierrez, Emilou MacClean, Shayana Kadidal, Center for Constitutional Rights, New York, NY; Beth Haroules, Arthur Eisenberg, New York Civil Liberties Union Foundation, New York, NY, *on the brief*), *for Plaintiffs-Appellees-Cross-Appellants*.

---

WESLEY, *Circuit Judge*:

The Central Intelligence Agency ("CIA"), the Department of Justice ("DOJ"), and its component Office of Legal Counsel ("OLC") (collectively the "Government") appeal from a portion of an October 1, 2010 judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*), requiring the Government to disclose, pursuant to the Freedom of Information Act ("FOIA"), information redacted from two memoranda prepared by the OLC. The Government contends that the redactions are justified under FOIA because the information pertains to a highly classified, active intelligence method. We conclude that the Government may withhold this information under FOIA Exemption 1. We thus reverse the district court's judgment insofar as it required disclosure.

The American Civil Liberties Union ("ACLU"), Center for

3

Constitutional Rights, Incorporated, Physicians for Human Rights, Veterans for Common Sense, and Veterans for Peace (collectively "Plaintiffs") appeal from the same judgment insofar as it upheld the Government's withholding of records relating to the CIA's use of the Enhanced Interrogation Technique ("EIT") of waterboarding and a photograph of high-value detainee Abu Zubaydah, taken while he was in CIA custody abroad. Plaintiffs contend that the records and photograph may not be withheld under either FOIA Exemption 1 or 3 because the President has declared the practice of waterboarding illegal and the Government has failed to justify adequately its withholding of the photograph. We disagree and hold that the President's declaration and prohibition of the future use of waterboarding do not affect the Government's otherwise valid authority to withhold the records under Exemption 3. We agree with the district court that both the records and photograph are exempt from disclosure under FOIA Exemption 3 and thus affirm that part of the judgment.

**BACKGROUND**

On October 7, 2003, Plaintiffs submitted a FOIA request to the CIA, DOJ, and other federal agencies, seeking the

4

disclosure of records concerning (1) the treatment of detainees; (2) the deaths of detainees while in United States custody; and (3) the rendition, since September 11, 2001, of detainees and other individuals to countries known to employ torture or illegal interrogation methods. On January 31, 2005, Plaintiffs served a FOIA request on the OLC, incorporating by reference their October 7, 2003 request and enumerating a non-exhaustive list of documents falling within the scope of Plaintiffs' request.

Within a year of each request, Plaintiffs filed separate complaints seeking to compel the Government to release any responsive documents it had withheld from disclosure. With respect to the first action, the district court ordered the Government to produce or identify all records responsive to Plaintiffs' request. *ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004). Since that time, the Government has disclosed thousands of documents in response to Plaintiffs' FOIA requests.

**I. Facts and Procedural History Relevant to the Government's Appeal**

Among the documents disclosed by the Government are four memoranda authored by the OLC between August 1, 2002 and May 30, 2005, analyzing legal questions with respect to

5

the application of EITs to detainees held in CIA custody abroad. The Government initially withheld these memoranda in full, but subsequently, on April 16, 2009, released unclassified versions of the memoranda with limited redactions. The classified information at issue in the Government's appeal is discussed in two of these memoranda, dated May 10, 2005 and May 30, 2005, respectively. The Government redacted references to the classified information—along with other information not relevant to this appeal—pursuant to FOIA Exemptions 1 and 3 on the basis that records related to "intelligence methods," "intelligence activities," and CIA "functions" are exempt from disclosure.[1] The parties filed cross-motions for summary judgment with regard to these redactions from the OLC memoranda.

The district court reviewed the unredacted OLC

---

[1] Exemption 1 provides for the nondisclosure of matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 3 provides for the nondisclosure of matters that are "specifically exempted from disclosure by statute," provided that the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* § 552(b)(3).

6

memoranda in a series of *ex parte*, *in camera* sessions.  It also reviewed several declarations from high-level executive branch officials supporting the Government's withholding of the redacted information.  At the first session, the district court issued a preliminary ruling that all but one of the references to the classified information must be disclosed, without explaining why it treated that sole reference differently.  With respect to the other references, the district court held that publicly disclosing that information would reveal not an intelligence method but only a source of the CIA's authority.  The district court also found that the references are so general in nature that their disclosure would not compromise national security.  The district court nevertheless permitted the Government to submit additional declarations justifying its position that the information was exempt from disclosure.

During a subsequent *in camera* session, the district court reaffirmed its preliminary ruling and explained that it viewed the classified information as a "source of authority" for interrogation rather than a "method of interrogation."  As a compromise, however, the district court offered to allow the Government to replace references

to the classified information with alternative language meant to preserve the meaning of the text. The district court acknowledged the national security concerns potentially raised by the disclosure of some of the classified information, but nevertheless ordered that the Government either disclose the information or comply with the court's proposed compromise. The district court also ordered that references to the classified information in the transcript of the first *ex parte*, *in camera* proceeding be disclosed or otherwise released in accordance with the compromise. The district court memorialized its oral ruling in a December 29, 2009 order. The Government now appeals from that order.

**II. Facts and Procedural History Relevant to Plaintiffs' Cross-Appeal**

Many of the documents released by the Government in response to Plaintiffs' FOIA requests relate to the use of EITs. During the course of this litigation, the President prohibited the future use of certain EITs, including waterboarding, formerly authorized for use on high-value detainees.[2] On May 7, 2009, the district court ordered the

---

[2] On January 22, 2009, the President issued an executive order terminating the CIA's detention and interrogation program

8

Government to compile a list of documents related to the contents of 92 destroyed videotapes of detainee interrogations that occurred between April and December 2002 and which would otherwise have been responsive to Plaintiffs' FOIA requests. Pursuant to that order, the CIA identified 580 documents and selected a sample of 65 documents for the district court to review for potential release. Specifically, the sample records comprise:

- 53 cables (operational communications) between CIA headquarters and an interrogation facility;
- 3 emails postdating the videotapes' destruction;
- 2 logbooks detailing observations of interrogation sessions;
- 1 set of handwritten notes from a meeting between a CIA employee and a CIA attorney;
- 2 memoranda containing descriptions of the contents of the videotapes;
- 1 set of handwritten notes taken during a review of the videotapes;
- 2 records summarizing details of waterboard exposures from the destroyed videotapes; and
- 1 photograph of Abu Zubaydah dated October 11, 2002.

and mandating that individuals in United States custody "not be subjected to any interrogation technique or approach, or any treatment related to interrogation, that is not authorized by and listed in Army Field Manual 2-22.3." Exec. Order No. 13,491, 74 Fed. Reg. 4,893, 4,894 (Jan. 22, 2009). Moreover, in an April 29, 2009 news conference, the President explained the basis for his ban on the use of waterboarding: "[W]aterboarding violates our ideals and our values. I do believe that it is torture. I don't think that's just my opinion; that's the opinion of many who've examined the topic. And that's why I put an end to these practices." President Barack Obama, News Conference by the President (Apr. 29, 2009), http://www.whitehouse.gov/the-press-office/news-conference-president-4292009.

The Government withheld these records pursuant to FOIA Exemptions 1 and 3, and the parties filed cross-motions for summary judgment with regard to whether the records were exempt from disclosure.[3]

The Government defended its withholding of the records with three declarations of then-CIA Director Leon Panetta. The declarations explained that the records consist primarily of communications to CIA headquarters from a covert CIA facility where interrogations were being conducted, and include "sensitive intelligence and operational information concerning interrogations of Abu Zubaydah." Panetta Decl. ¶ 5, June 8, 2009. With respect to Exemption 3, the declarations explained that, if disclosed, the records would "reveal intelligence sources and methods" employed by the CIA, as well as "the organization and functions of the CIA, including the conduct of clandestine intelligence activities to collect intelligence from human sources using interrogation methods." *Id.* ¶¶ 32, 35. With respect to Exemption 1, the

---

[3] The Government also withheld portions of the records pursuant to other FOIA Exemptions. Plaintiffs do not challenge those withholdings on appeal.

10

declarations asserted that the records were properly classified pursuant to Executive Order No. 12,958 and that their disclosure could reasonably be expected to result in harm to national security.

In response, Plaintiffs argued that the EITs were not "intelligence methods" within the meaning of the CIA's withholding authorities because they had been repudiated, and, in the case of waterboarding, declared unlawful by the President. Plaintiffs also argued that the CIA had failed to provide any explanation for withholding the photograph of Abu Zubaydah under either Exemption 1 or 3.

On September 30, 2009, the district court reviewed the photograph and a portion of the sample records in an *ex parte*, *in camera* session. The district court made preliminary rulings upholding the Government's nondisclosure of all but one document. That document is not at issue in Plaintiffs' cross-appeal. With respect to the photograph of Abu Zubaydah, the Government asserted that it was "actually a CIA photo of a person in custody," and the court accepted the Government's position that a photograph of a detainee reveals "a lot more information" than the detainee's identity. During the public hearing, the district court

11

rejected Plaintiffs' argument that the President's declaration was a sufficient basis for rejecting the Government's position. The district court explained that it would "decline to rule on the question of legality or illegality in the context of a FOIA request." J.A. 1105-06. Rebuffing Plaintiffs' argument that the photo should be produced because the Government offered no justification for its withholding, the district court sustained the withholding and explained that "the image of a person in a photograph is another aspect of information that is important in intelligence gathering." J.A. 1115.

The district court memorialized its rulings in an October 13, 2009 order. In sustaining the withholding of the records under FOIA Exemption 3, the district court concluded that the CIA had satisfied its burden of showing that the release of the records could reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods. The district court also rejected Plaintiffs' argument that records relating to illegal activities are beyond the scope of Exemption 3.

In a July 15, 2010 order, the district court denied Plaintiffs' motion for reconsideration of its October 2009

12

order. In doing so, the district court reaffirmed its view that neither statutory language nor case law supports Plaintiffs' contention that the legality of the underlying intelligence source or method bears upon the validity of an Exemption 3 withholding.

On October 1, 2010, the district court entered partial final judgment pursuant to Federal Rule of Civil Procedure 54(b), granting Plaintiffs summary judgment with regard to the Government's withholding of the classified information in the two OLC memoranda, and granting the Government summary judgment with regard to the nondisclosure of records related to the contents of the destroyed videotapes and the photograph. Plaintiffs limit their cross-appeal to those records reflecting the CIA's use of waterboarding and to the photograph of Abu Zubaydah.

**DISCUSSION**

The Freedom of Information Act "calls for broad disclosure of Government records." *CIA v. Sims*, 471 U.S. 159, 166 (1985). But public disclosure of certain government records may not always be in the public interest. Thus, Congress provided that some records may be withheld from disclosure under any of nine exemptions defined in 5

13

U.S.C. § 552(b).  *Id.* at 167.

An agency withholding documents responsive to a FOIA request bears the burden of proving the applicability of claimed exemptions.  *Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009).  "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).  We review the adequacy of the agency's justifications *de novo*.  *Wilner*, 592 F.3d at 73.  In the national security context, however, we "must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotation marks omitted); *see also Sims*, 471 U.S. at 179. Summary judgment is appropriate where the agency affidavits "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Wilner*, 592 F.3d at 73.  Ultimately, an agency may invoke a FOIA

14

exemption if its justification "appears logical or plausible." *Id.* (internal quotation marks omitted).

**I. The Government's Appeal—The OLC Memoranda**

The Government contends that the information redacted from the OLC memoranda may be withheld from disclosure under either FOIA Exemption 1 or 3. In our view, Exemption 1 resolves the matter easily.[4] Exemption 1 permits the Government to withhold information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" if that information has been "properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The Government contends that the redacted information was properly classified under Executive Order No. 12,958, as amended, which authorized the classification of information concerning "intelligence activities (including special activities), intelligence sources or methods, or cryptology." Exec. Order No. 12,958 § 1.5(c), 60 Fed. Reg. 19,825 (Apr. 17, 1995), *as amended by* Exec. Order No.

---

[4] Because the FOIA Exemptions are independent of each other, we need only discuss why we conclude that the Government may invoke FOIA Exemption 1 to justify withholding the redacted information in the OLC memoranda. *See Wilner*, 592 F.3d at 72 (citing *Larson v. Dep't of State*, 565 F.3d 857, 862-63 (D.C. Cir. 2009)).

15

13,292, 68 Fed. Reg. 15,315 (Mar. 25, 2003) (hereinafter "Exec. Order No. 12,958").[5] Executive Order No. 12,958 also required as a condition to classification that an original classification authority "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and "is able to identify or describe the damage." *Id.* § 1.1(a)(4), 68 Fed. Reg. at 15,315.[6]

The district court held that the exemption was inapplicable because, in its view, the information pertains to a "source of authority" rather than a "method of interrogation." J.A. 1174-75.[7] On appeal, as it did in the district court, the Government contends that the information pertains to an intelligence method and an intelligence

---

[5] Executive Order No. 12,958 and all amendments thereto have since been superseded by Executive Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009). For purposes of Exemption 1, the propriety of a classification decision is considered under the criteria of the executive order that applied when the decision was made. *See Halpern v. FBI*, 181 F.3d 279, 289 (2d Cir. 1999).

[6] The parties do not dispute whether the remaining criteria for proper classification have been satisfied. *See* Exec. Order No. 12,958 § 1.1(a), 68 Fed. Reg. at 15,315.

[7] Addressing only the applicability of Exemption 3, the district court concluded that the information does not pertain to an "intelligence method" and therefore was not exempt. It made no express ruling on whether the information relates to an "intelligence activity" under FOIA Exemption 1.

16

activity, and that each category provides a basis for classification under Executive Order No. 12,958. In support of this contention, the Government has submitted declarations from General James L. Jones, then-Assistant to the President for National Security and National Security Advisor; General Michael V. Hayden, then-Director of the CIA; Leon Panetta, then-Director of the CIA; and Wendy M. Hilton, Information Review Officer for Detainee-Related Matters for the CIA.

Based on our *ex parte* and *in camera* review of the unredacted OLC memoranda and the Government's classified declarations, we agree with the Government that the redacted information was properly classified because it pertains to an intelligence activity. Plaintiffs concede that, even if we were to characterize the information as a "source of authority," "withholding [a] source of authority itself is . . . proper if disclosing it would reveal . . . intelligence sources, methods, or activities." Pls.' Br. 40-41. We give substantial weight to the Government's declarations, which establish that disclosing the redacted portions of the OLC memoranda would reveal the existence and scope of a highly classified, active intelligence activity.

17

*See Doherty v. U.S. Dep't of Justice*, 775 F.2d 49, 52 (2d Cir. 1985).

We reject any notion that to sustain the Government's assertion that the withheld information concerns a protected "intelligence activity" under Executive Order No. 12,958 is effectively to exempt the CIA from FOIA's mandate. In response to Plaintiffs' FOIA requests and related court orders, the Government has already produced substantial information about its use of EITs, including almost all of the contents of the OLC memoranda. With regard to the limited material it has withheld from disclosure, the Government has sustained its burden by "giving reasonably detailed explanations" of how the information pertains to a classified intelligence activity. *Carney*, 19 F.3d at 812.

On appeal, Plaintiffs do not dispute that the Government has established that public disclosure of the redacted information "reasonably could be expected to result in damage to the national security." Exec. Order No. 12,958 § 1.1(a)(4), 68 Fed. Reg. at 15,315. Nor do we. "[W]e have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec.*

18

*Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003). "Recognizing the relative competencies of the executive and judiciary, we believe that it is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies" regarding whether disclosure of the information redacted from the OLC memoranda would pose a threat to national security. *Wilner*, 592 F.3d at 76 (internal quotation marks omitted).

The Government's declarations describe in persuasive detail how revealing the redacted information would cause exceptionally grave harm to national security by (1) "damaging on-going activities and relationships with foreign intelligence liaison partners, which are of utmost importance to the CIA's overseas intelligence operations," Hilton Decl. ¶ 9(a), May 7, 2010; (2) "alerting our adversaries of the existence of [the] intelligence method, which would give them the opportunity to alter their conduct to adapt to this new information and make future intelligence operations more dangerous and less effective," *id.* ¶ 9(b); and (3) "increasing the risks for all individuals involved in those operations, including CIA officers and assets," *id.* ¶ 9(c). According substantial

19

weight and deference to the CIA's declarations, *see Doherty*, 775 F.2d at 52, we conclude that it is both logical and plausible that the disclosure of the information pertaining to a CIA intelligence activity would harm national security.

Furthermore, we reject the district court's suggestion that certain portions of the redacted information are so general in relation to previously disclosed activities of the CIA that their disclosure would not compromise national security. It is true that the Government has disclosed significant aspects of the CIA's discontinued detention and interrogation program, but its declarations explain in great detail how the withheld information pertains to intelligence activities unrelated to the discontinued program. Hilton Decl. ¶ 6. And even if the redacted information seems innocuous in the context of what is already known by the public, "[m]inor details of intelligence information may reveal more information than their apparent insignificance suggests because, much like a piece of jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." *Wilner*, 592 F.3d at 73 (alterations and internal quotation marks omitted); *see also Sims*, 471 U.S.

20

at 178; *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 625 (D.C. Cir. 2011).  Again, it is both logical and plausible that disclosure of the redacted information would jeopardize the CIA's ability to conduct its intelligence operations and work with foreign intelligence liaison partners.

Both parties contend that the district court's compromise, whereby the Government could avoid public disclosure of the redacted information by substituting a purportedly neutral phrase composed by the court, exceeded the court's authority under FOIA.  We agree.  FOIA does not permit courts to compel an agency to produce anything other than responsive, non-exempt records.  *See* 5 U.S.C. § 552(a)(4)(B).  If the Government altered or modified the OLC memoranda in accordance with the compromise, the Government would effectively be "creating" documents—something FOIA does not obligate agencies to do.  *See, e.g., Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980); *Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n*, 585 F.2d 1382, 1388 (2d Cir. 1978).  Moreover, given the "relative competencies of the executive and judiciary," the district court erred in "second-guess[ing]" the executive's judgment

21

of the harm to national security that would likely result from disclosure, by crafting substitute text that—in its own view—would avoid the harms that could result from disclosure of the information in full. *See Wilner*, 592 F.3d at 76.

The district court's apparent reliance on the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, §§ 1-16, as a basis for the compromise was erroneous.[8] Contrary to the district court's assertion, CIPA applies exclusively to criminal cases. *See* 18 U.S.C. app. 3, §§ 2-3, 5. Indeed, CIPA is codified as the third appendix to Title 18 of the U.S. Code, which concerns *crimes and criminal procedure*, and we have found no case law supporting the district court's adoption of CIPA in a FOIA context such as this.[9]

---

[8] Although the district court referred to the "CISA, Confidential Information Securities Act," J.A. 1184-85, it appears that the court intended to refer to CIPA because there is no Confidential Information Securities Act and the court described the statute as providing a procedure for the introduction of classified information at trial. *Id.*

[9] The procedures of CIPA contrast sharply with those of FOIA. For example, under CIPA, when the court authorizes a defendant to disclose classified information during trial, the Government may move for the substitution of a summary of such classified information in lieu of the information itself, 18 U.S.C. app. 3, § 6(c), "to harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest," *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (internal quotation marks omitted). Significantly, the

22

The Government sufficiently explained that the withheld information pertains to an "intelligence activity" and that disclosure of the information would likely result in harm to national security.  The Government's declarations are not contradicted by the record, and there is no evidence of bad faith by the Government in this regard.  Accordingly, the Government has sustained its burden of proving that the information redacted from the OLC memoranda is exempt from disclosure under FOIA Exemption 1.  *See Wilner*, 592 F.3d at 73.  We therefore reverse the district court's judgment insofar as it required disclosure of the information—either in full or in accordance with the district court's compromise—in the OLC memoranda and the transcript of the district court's *ex parte*, *in camera* proceeding.

## II. Materials at Issue in Plaintiffs' Cross-Appeal

The district court agreed with the Government that the records related to the contents of destroyed videotapes of detainee interrogations and a photograph of high-value

---

Government retains ultimate control and may prevent a criminal defendant from disclosing classified information, with the consequence of the court either dismissing the indictment or taking another action adverse to the prosecution.  *See* 18 U.S.C. app. 3, § 6(e).  By contrast, the Government cannot walk away from a FOIA case in order to avoid disclosure of classified information.

detainee Abu Zubaydah in CIA custody may be withheld from disclosure under FOIA Exemption 3. Plaintiffs challenge the withholding of only those records relating to the CIA's use of waterboarding and the photograph.

Exemption 3 permits the Government to withhold information from public disclosure provided that: (1) the information is "specifically exempted from disclosure by statute"; and (2) the exemption statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see Sims*, 471 U.S. at 167-68. Here, the Government contends that the records and photograph pertain to an "intelligence method" under section 102A(i)(1) of the National Security Act of 1947 ("NSA") and CIA "functions" under section 6 of the Central Intelligence Act of 1949, which include the collection of intelligence through human sources, *see* 50 U.S.C. § 403-4a(d).[10] Plaintiffs do not dispute that these

[10] Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 401 *et seq.*, requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1). Section 6 of the Central Intelligence Act of 1949, as amended, 50 U.S.C. § 403 *et seq.*, provides that the CIA shall be exempted

24

statutes qualify as exemption statutes under Exemption 3. *See Larson*, 565 F.3d at 865; *Baker v. CIA*, 580 F.2d 664, 667 (D.C. Cir. 1978). Thus, our only remaining inquiry is whether the withheld material relates to an intelligence method or functions of the CIA. *Larson*, 565 F.3d at 865; *Phillippi v. CIA*, 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976).[11]

**A. The Interrogation Records**

Plaintiffs contend that the records regarding the use of waterboarding in particular instances do not relate to an "intelligence method" because the President has declared the practice of waterboarding illegal. Relying on the Supreme Court's decision in *CIA v. Sims*, Plaintiffs argue that the CIA may decline to disclose only records relating to those intelligence methods that fall within the CIA's charter. Plaintiffs argue that because an illegal activity cannot be said to "fall within the Agency's mandate to conduct foreign

---

from "the provisions of any other law which require the publication or disclosure" of the "functions" of the Agency. 50 U.S.C. § 403g.

[11] Because, as previously discussed, FOIA exemptions are independent of each other, we explain only our conclusion that the Government may invoke FOIA exemption 3 to justify withholding the interrogation records and the photograph. *See supra* note 4. We do not address the possible coverage provided these materials by Exemption 1.

25

intelligence," *Sims*, 471 U.S. at 169, waterboarding cannot be an "intelligence method" within the meaning of the CIA's withholding authorities.[12]

We do not agree. *Sims* offers no support for Plaintiffs' proposed limitation upon the CIA's ability to protect information relating to intelligence methods. On the contrary, the *Sims* Court emphasized that the NSA "vested in the Director of Central Intelligence very broad authority to protect all sources of intelligence information from disclosure," and that judicial "narrowing of this authority not only contravenes the express intention of Congress, but also overlooks the practical necessities of modern intelligence gathering—the very reason Congress entrusted this Agency with sweeping power to protect its 'intelligence sources and methods.'" *Sims*, 471 U.S. at 168–69. According to the Court, the "plain meaning" of "intelligence sources and methods" in this context, "may not be squared with any

---

[12] Plaintiffs concede that an illegal act may produce information that may be properly withheld under FOIA Exemptions 1 and 3. Plaintiffs do not seek disclosure of information that may otherwise be classified for reasons apart from the fact that it would disclose details of the use of waterboarding. To the extent the records discuss such information, such as questions asked during an interrogation or intelligence gathered from an interrogation session, Plaintiffs agree that the information should be segregated and may remain classified.

26

limiting definition that goes beyond the requirement that the information fall within the Agency's mandate to conduct foreign intelligence." *Id*. at 169.[13]

Here, Plaintiffs argue that the provision of the NSA requiring the Director of National Intelligence to "ensure compliance with the Constitution and laws of the United States," *see* 50 U.S.C. § 403-1(f)(4), delimits the Director's obligation under section 102A(i)(1) to "protect intelligence sources and methods from unauthorized disclosure," *see* 50 U.S.C. § 403-1(i)(1), and the concomitant rights under FOIA to decline to disclose. The statutory language does not, however, draw any such limitation, and to do so by judicial device would flout *Sims*'s clear directive against constricting the CIA's broad authority in this domain. Again, *Sims* expressly rejected any limitation on the CIA's duty to protect information "beyond the requirement that the information fall within the Agency's mandate to conduct foreign intelligence." *Sims*, 471 U.S. at 169. Plaintiffs' argument lacks support in either the statute's text or in the case law interpreting

---

[13] The statutory provision at issue in *Sims* was a materially identical precursor to section 102A(i)(1) of the NSA. *See Sims*, 471 U.S. at 167–68.

that text.

Moreover, we are wary of the practical difficulties that would likely arise were the category of protectable intelligence methods circumscribed as Plaintiffs propose. In FOIA actions in which the government seeks to withhold information related to an intelligence method, an information officer and then the court would potentially be forced to engage in a complex inquiry to determine whether the government has sufficiently demonstrated the legality of the method to justify withholding. In this respect, we question how the court and the agency would handle varying assessments of legality. What becomes of information concerning a method that the President, on advice of counsel, considers legal, but which is later declared unlawful by a federal court or by a subsequent administration? Relatedly, is the legality of a method to be determined as of the time of the method's use or may a forward-looking proscription also apply retroactively to prevent reliance on an exemption? The matter currently before us helps illustrate the point. Even if we assumed that a President can render an intelligence method "illegal" through the mere issuance of public statements, or, more

28

formally, through adoption of an executive order, and if we further assumed that President Obama's Executive Order coupled with his statements describing waterboarding as "torture" were sufficient in this regard, we would be left with the difficult task of determining what retroactive effect, if any, to assign that designation. In our view, such an "illegality" inquiry is clearly beyond the scope and purpose of FOIA. *See Wilner*, 592 F.3d at 77.

Finally, we also note that prior courts faced with similar questions have declined to address the legality of an intelligence method as part of a FOIA analysis. In *ACLU v. U.S. Department of Defense*, the District of Columbia Circuit rejected the very argument raised by Plaintiffs here: that an interrogation technique formerly authorized for use on high-value detainees is no longer a protectable "intelligence method" for FOIA purposes if the President bans its future use. *See* 628 F.3d at 622. After noting that *Sims* "says nothing suggesting that the change in the specific techniques of intelligence gathering by the CIA renders unprotected sources and methods previously used," the court held that "the President's prohibition of the future use of certain interrogation techniques . . . does

29

not diminish the government's otherwise valid authority to . . . withhold [information] from disclosure under exemptions 1 and 3." *Id.*

In *Wilner v. NSA*, our Court considered whether the government could refuse to confirm or deny the existence of records obtained under the since-discontinued Terrorist Surveillance Program ("TSP"). 592 F.3d at 64-65. The plaintiffs in *Wilner* claimed that the government had illegally obtained information about them through the TSP. They argued that the NSA improperly refused to disclose this information because any such records would have been obtained in violation of the U.S. Constitution. *Id.* at 77. In concluding that the government properly withheld the information at issue under FOIA Exemption 3, we declined to reach "the legality of the underlying Terrorist Surveillance Program," reasoning that this question was "beyond the scope" of the plaintiffs' FOIA action. *Id.* at 77.

We recognize that the plaintiffs in *Wilner* did not make the precise argument advanced here: that the statutory meaning of "intelligence methods" precludes the government from employing that label for a technique that the President has declared to be unlawful and thus outside the CIA's

30

charter. But in our view, *Wilner*'s principle is equally applicable here—a judicial determination of the legality of waterboarding is beyond the scope of this FOIA action. For the foregoing reasons, we reject Plaintiffs' argument that the Government could not withhold information relating to waterboarding on the grounds that waterboarding is now "illegal" and therefore beyond the CIA's mandate.

According substantial weight to the CIA's declarations, *see Wolf*, 473 F.3d at 374, we have no difficulty in concluding that the records in question, which we have reviewed *in camera*, relate to an intelligence method within the meaning of the NSA, and, accordingly, may be withheld. The parties agree that waterboarding was an interrogation method used by the CIA in connection with its foreign intelligence-gathering activities. Because the CIA's declarations are not contradicted by the record or undermined by any allegations of bad faith,[14] the Government has sustained its burden of proving that the records relating to the CIA's use of waterboarding are exempt from

---

[14] In addition, Director Panetta confirmed that the records were withheld not to suppress evidence of any unlawful conduct but rather to protect intelligence sources and methods. We accord a "presumption of good faith" to this declaration, *Carney*, 19 F.3d at 812.

31

disclosure under FOIA Exemption 3.  *See Wilner*, 592 F.3d at 73, 76-77.

**B. The Photograph of Abu Zubaydah**

Plaintiffs contend that the CIA failed to provide any justification for withholding a photograph of Abu Zubaydah taken while he was in CIA custody abroad and that the post hoc explanations offered by the Government's counsel do not suffice to justify the withholding.  We disagree.  In a June 8, 2009 unclassified declaration, Director Panetta explained that all of the records he reviewed in connection with his invocation of FOIA Exemptions 1 and 3, including the photograph, are "related to the contents of 92 destroyed videotapes of detainee interrogations that occurred between April and December 2002."  Panetta Decl. ¶ 3, June 8, 2009. Director Panetta further declared that "miscellaneous documents" in the sample records, including the photograph, "contain[] TOP SECRET operational information concerning the interrogations" of Abu Zubaydah.  *Id*. ¶ 5.  On appeal, the Government has expanded upon Director Panetta's justification for withholding by explaining that the photograph necessarily "relates to" an "intelligence source or method" because it records Abu Zubaydah's condition in

the period during which he was interrogated.

We have reviewed the photograph *in camera*. Our examination has been informed by our contemporaneous review of other sample records. Like the district court, we observe that a photograph depicting a person in CIA custody discloses far more information than the person's identity. We agree with the district court that the image at issue here conveys an "aspect of information that is important to intelligence gathering," J.A. 1115, and that this information necessarily "relates to" an "intelligence source or method." The Government's justification for withholding the photograph is thus both "logical and plausible." *See Wilner*, 592 F.3d at 75. Moreover, Director Panetta's declaration is entitled to substantial weight, *see Wolf*, 473 F.3d at 374, and this Court must adopt a "deferential posture in FOIA cases regarding the uniquely executive purview of national security," *Wilner*, 592 F.3d at 76 (internal quotation marks omitted). Accordingly, we affirm the district court's conclusion that the Government has adequately justified its withholding of the photograph under FOIA Exemption 3.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED** in part and **REVERSED** in part. We affirm the judgment of the district court insofar as it sustained the Government's withholding of records relating to the CIA's use of waterboarding and the photograph of Abu Zubaydah. We reverse that part of the judgment that requires the Government either to disclose the classified information in the OLC memoranda and the transcript of the district court's *ex parte*, *in camera* proceeding, or to substitute language proposed by the district court.