18-2265

American Civil Liberties Union v. Central Intelligence Agency

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2018

(Argued: June 13, 2019        Decided: February 2, 2022)

Docket No. 18-2265-cv

AMERICAN CIVIL LIBERTIES UNION,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION,

*Plaintiffs-Appellees,*

v.

CENTRAL INTELLIGENCE AGENCY,

*Defendant-Appellant.*

Before: LEVAL, POOLER, and CHIN, *Circuit Judges*:

Appeal from the June 19, 2018 amended judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) ordering the Central Intelligence Agency to make public certain information contained in a draft summary of the CIA's former detention and interrogation program, as well

as the transcript of certain ex parte proceedings before the district court. The CIA argues the information was properly withheld under Exemptions 1 and 3 to the Freedom of Information Act. We agree with the CIA that Exemption 1 requires withholding certain information the district court ordered disclosed.

Reversed in part.

---

SARAH NORMAND, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, Joseph H. Hunt, Assistant Attorney General, Sharon Swingle, Attorney, Appellate Staff Civil Division, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, N.Y., *for Appellant*.

DROR LADIN, American Civil Liberties Union (Hina Shamsi, American Civil Liberties Union, Lawrence S. Lustberg, Gibbons P.C., Arthur Eisenberg, Beth Haroules, New York Civil Liberties Union Foundation, *on the brief*), New York, N.Y., *for Appellees*.

Bruce D. Brown, The Reporters Committee for Freedom of the Press (Katie Townsend, *on the brief*), Washington, D.C., *for amicus curiae The Reporters Committee for Freedom of the Press, American Society of Newspaper Editors, The Associated Press Media Editors, Association of Alternative Newsmedia, Courthouse News Service, E.W. Scripps Co., First Look Media Works, Inc., Freedom of the Press Foundation, Gannett Co., International Documentary Association, Investigative Writing Workshop, McClatchy Co., Media Institute, MAP-The Association of Magazine*

*Media, National Press Photographers Association, The New York Times Co., Online News Association, POLITICO LLC, Pro Publica, Inc., Radio Television Digital News Association, Reporters Without Borders, Society of Professional Journalists, The Tully Center for Free Speech, in support of Appellees.*

PER CURIAM:

Appeal from the June 19, 2018 amended judgment of the United States District Court for the Southern District of New York (Hellerstein, J.) ordering the Central Intelligence Agency to make public certain information contained in a draft summary of the CIA's former detention and interrogation program, as well as the transcript of certain ex parte proceedings before the district court. The CIA argues the information was properly withheld under Exemptions 1 and 3 to the Freedom of Information Act. We agree with the CIA that Exemption 1 requires withholding certain information the district court ordered disclosed. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

At issue here are discrete redactions to the publicly released report, "Summary and Reflections of Chief of Medical Services on OMS Participation in the RDI Program," detailing the role of medical professionals in the CIA's detention and interrogation program. In August 2015, the American Civil Liberties

Union and American Civil Liberties Union Foundation (collectively, "ACLU") filed a FOIA request for a number of documents referenced in the publicly released executive summary of the Senate Select Committee on Intelligence's *Committee Study of the CIA's Detention and Interrogation Program* (the "SSCI Report"). The SSCI Report examined, in relevant part, the CIA's actions in handling suspected terrorists in secret overseas prisons known as "black sites." App'x at 20-21. The ACLU alleges that the CIA engaged in torture at these sites. In 2014, the government released a redacted version of the SSCI Report to the public, and later released a redacted version of the CIA's response. In 2015, the CIA "issued new guidance that declassified numerous aspects" of the black site program. App'x at 21.

The ACLU brought this action in seeking the release of 69 "records and categories of records identified in the SSCI Report or whose classification status is implicated by its public release, by the CIA response, and by the accompanying change in classification guidance." App'x at 23. Among the records sought is the one at issue in this appeal: Document 66, titled "Summary and Reflections of Chief of Medical Services on OMS Participation in the RDI Program" (the "Draft OMS Summary"). The Draft OMS Summary is an 89-page

classified draft document prepared by the former head of the CIA's Office of Medical Services, and it describes and reflects on OMS's participation in the CIA's detention program. The Draft OMS Summary has not been adopted or approved by the CIA. The CIA states that "[t]he document is not limited to matters relating to OMS; the author purports to provide a detailed history of the CIA's detention and interrogation program over the course of several years. The author also discusses and comments upon specific press reports on the program and the extent to which the reporting was or was not accurate."

The government moved for summary judgment. The district court ordered the release of the Draft OMS Summary, but permitted the CIA to redact information concerning "foreign liaison services," "locations of covert CIA installations and former detention centers," "classified code words and pseudonyms," and "classification and dissemination control markings." App'x at 175. The district court found that with the exception of those categories—which are not challenged on appeal—the CIA failed to establish the applicability of Exemptions 1 and 3 to the Draft OMS Summary.

The CIA moved for reconsideration, and the district court allowed it to make an ex parte submission identifying the specific information in the Draft

OMS Summary that the CIA sought to withhold, along with its justifications. The district court allowed a further ex parte submission, and conducted an ex parte, in camera hearing on January 18, 2018. During that hearing, the district court made individualized rulings on each of the CIA's claimed withholdings. The district court agreed with the CIA as to the majority of the proposed redactions, but ordered the disclosures, detailed below, challenged here on appeal. They include discussions of, and citations to, newspaper articles and other press reports regarding the CIA's black site detention and interrogation programs, although the government was allowed to redact comments related to the accuracy of such reports. The district court also directed the release of related information in the public transcript of the January 18, 2018 hearing (the "Transcript"). The district court ordered the information released immediately, but this Court stayed that order pending this opinion.

## DISCUSSION

"We review *de novo* a district court's grant of summary judgment in a FOIA case [and] [w]e also review *de novo* a decision to require partial production of documents following *in camera* review, in keeping with the spirit and the text of the FOIA and its presumption in favor of disclosure." *Nat'l Council of La Raza*

■

*v. Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005) (internal citation and quotation marks omitted). FOIA "calls for broad disclosure of Government records," subject to nine exemptions. *CIA v. Sims*, 471 U.S. 159, 166-67 (1985); 5 U.S.C. § 552(b). "[C]onsistent with the Act's goal of broad disclosure, these exemptions have consistently been given a narrow compass." *N.Y. Times Co. v. Dep't of Justice*, 756 F.3d 100, 111 (2d Cir. 2014) (internal quotation marks omitted). "The government bears the burden of demonstrating that an exemption applies to each item of information it seeks to withhold, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016) (internal quotation marks omitted).

"Affidavits or declarations . . . giving reasonably detailed explanations of why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). When reviewing exemption claims made in the national security arena, we "accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *ACLU v. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir. 2012) (internal quotation marks omitted). Agency affidavits must "describe the justifications for nondisclosure with reasonably specific detail,

7

demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (internal quotation marks omitted).

Here, the CIA seeks to withhold material under FOIA Exemptions 1 and 3. Exemption 1 permits the agency to withhold information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [that is] in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1)(A). Executive Order 13,526 allows information to be classified if it "pertains to" several categories, such as "intelligence activities (including covert action), intelligence source or methods," where an official with original classification authority has determined that "unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security." Exec. Order 13,526 § 1.4, 75 Fed. Reg. 707, 707-9 (Dec. 29, 2009).

Exemption 3 allows an agency to withhold information from public disclosure if "(1) the information is specifically exempted from disclosure by statute; and (2) the exemption statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or establishes a particular criteria for withholding or refers to particular types of matters to be withheld." *Florez*, 829 F.3d at 183 (internal quotation marks omitted); 5 U.S.C. § 552(b)(3). The National Security Act of 1947, as amended, requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1).

## I. Information Related to Specific CIA Intelligence Activities, Sources and Methods

We discuss each contested disclosure as to specific CIA intelligence activities, sources and methods in turn:

### A. Name of City and a War

The district court ordered disclosed that ▮▮▮▮▮▮▮▮ medical services personnel in ▮▮▮▮ during ▮▮▮▮▮▮. The CIA sought to redact this information on the ground that if disclosed, it would "associate the CIA with [] intelligence activities during that period of time and in that location," and that information remains classified. Classified App'x at 113. The district court

9

████████████████████████████████████████

ordered it released because "[t]his is so old now, there is no harm that could flow from this." Classified App'x at 113.

The district court erred in ordering disclosure. The CIA offered a plausible reason for nondisclosure: to avoid associating the CIA with intelligence activities undertaken during a specific time and at a specific place. There is no basis in the record for the district court's assessment that the information is "too old" to remain classified. "[E]ven if the redacted information seems innocuous in the context of what is already known by the public, minor details of intelligence information may reveal more information than their apparent insignificance suggests, because, much like a piece of a jigsaw puzzle, each detail may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." *ACLU*, 681 F.3d at 71 (internal quotation marks omitted). We reverse the district court's order to disclose this information, and also reverse the order disclosing the discussion about this information in the Transcript.

B. ████████████████

The district court ordered the CIA to disclose ████████████████

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in both the OMS Draft Summary and the Transcript. The CIA sought to redact that information on the ground that it "would associate the CIA with specific individuals and activities ▮▮▮▮▮▮▮, and thus the information pertains to CIA intelligence activities, sources, and methods." Classified Gov't Br. at 24. The district court ordered the information disclosed because it could not "see the need for classification of ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Classified App'x at 114. Again, we find that the CIA proffered a plausible reason for nondisclosure, and the district court's rationale simply is insufficient to reject the requested redaction, and its ruling as to this disclosure is reversed.

**C. Information relating to ▮▮▮▮**

The district court ordered disclosure of the fact that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and that the CIA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The CIA sought to redact the information that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮. It argued that the redaction was proper because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[REDACTED] Classified App'x at 119. Further, the CIA argues, releasing such information "would give adversaries valuable insight into the CIA's tradecraft and [REDACTED] [REDACTED] Classified App'x 14, 119. The district court ordered disclosure because "[i]t's too well known. That's to be published." Classified App'x at 119. We find nothing in the record to support the district court's conclusion that the information is already well known. Even assuming district court knew the information prior to reading the Draft OMS Summary, it does not follow that the information is so well known as to justify disclosure. The district court's order requiring disclosure is reversed.

**D. Construction**

The district court ordered the CIA to disclose a passage on page 53 of the Draft OMS Summary that described the CIA's construction of several detention facilities. The CIA sought to redact this information on the ground that information related to how the CIA constructs facilities was potentially harmful to national security because it would offer insights into how the facilities are used during interrogations. The district court disagreed, stating it did not "see a

12

harm" from disclosure, and "[i]t only shows you're doing the right thing."

Classified App'x at 128. The government argued that disclosing the specifics of how CIA detention facilities, including the use of specific hardware, could allow an outside party to deduce how the CIA detains and interrogates people. The district court erred in not deferring to the CIA's plausible and logical reason for redacting this information, and its order requiring disclosure is reversed.

### E. Other Transcript disclosures

The district court ordered the disclosure of information in the Transcript related to discussions of: (1) ███████████████████████████████; (2) ███████████████████████████████████████████; and (3) ████████████████████████████████████████████████████████. The district court ordered disclosure of this information from the transcript even though it previously, and correctly, determined that these materials were properly withheld from disclosure when the Draft OMS Summary was released. There was no basis for the district court to order the disclosure of information in the Transcript that was correctly withheld in the Draft OMS Summary.

13

Because we find that the above are properly withheld under Exemption 1, need not address the CIA's argument that the information is properly withheld under Exemption 3. *See Larson v. Dep't of State*, 565 F.3d 857 (2d Cir. 2009) ("FOIA Exemptions 1 and 3 are independent; agencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other.").

The district court's order of the following disclosures is therefore reversed:



*OMS Draft Summary, page 2, paragraph 1:*

*Transcript, page 4:14:*

*Transcript, page 5:2-4, 6:*

*Transcript, page 5:12-13, 22:*

*Draft OMS Summary, page 6, third paragraph, second sentence:*

*Draft OMS Summary, page 53, first paragraph:*



*Transcript, page 6:20-21:*

*Transcript, page 12, lines 10-11, 16-19:*

*Transcript, page 12:23-25-13:1:*

*Transcript page 13:24-25, page 14:1, 2, and 5:*

*Transcript, page 17:4:*

## II.   Published press reports

The CIA also challenges the district court's order requiring a disclosure of certain information discussing and citing to certain press reports. The district court reasoned that "[t]hese are public newspaper accounts and they should be produced." App'x at 219. The CIA challenges this assessment, arguing that "the author's selection of specific press reports to discuss, his focus on particular aspects of the reports, and the manner in which he describes them—all tend to reveal classified and statutorily protected information that the CIA has not officially acknowledged." Appellant's Br. at 38. The ACLU argues there is a

██████████████████████████████████████

difference between the press citations and the author's assessments of the articles, such that the bare citations may be released without confirming or denying the information within the cited articles.

Our Court requested supplement briefing from both parties on the issue, and we are persuaded by the rationales set forth in the government's letter brief that the contested material should be redacted. We thus reverse the district court's order disclosing the bare citations to press reports found in the Draft OMS Summary at (1) Page 22, first paragraph and footnotes 43-44; (2) Page 35, first full paragraph and footnotes 71-72; (3) Page 43, footnote 87; (4) Page 54, footnotes 114-115; (5) Pages 65-66, select text and footnotes 125, 127, and 132; and (5) Pages 68-69, selected text and footnotes 135-138, 140.[1]

## CONCLUSION

For the reasons given above, the order of the district court is reversed.

---

[1] The CIA release certain portions of text and corresponding citations to press reports on page 65, as indicated in its letter brief of October 19, 2021.